## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CABELA'S WHOLESALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. __13-118 ERIE__ |
| | ) | |
| v. | ) | |
| | ) | |
| MILLCREEK MARKETPLACE, LLC | ) | **JURY TRIAL DEMANDED** |
| and THE CAFARO COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Cabela's Wholesale, Inc. ("Cabela's Wholesale"), by and through it attorneys,

K&L Gates LLP, file this Complaint against the above-captioned defendants, The Cafaro

Company and Millcreek Marketplace, LLC (collectively, "Defendants"), and in support thereof

states as follows:

### NATURE OF THE ACTION

1.      This action stems from Defendants' wrongful inducement of Cabela's Wholesale

to make substantial investments totaling over $400,000 in a site at the Millcreek Marketplace

Shopping Center (the "Marketplace Site").

2.      In order to induce Cabela's Wholesale to make these investments, Defendants'

repeatedly assured Cabela's Wholesale that there was not, nor would there ever be, any

contractual impediments to finalizing a lease for the Marketplace Site. Specifically, Defendants

represented that there would be no restrictive covenants relating to competitors in any of its

contracts with third parties that would preclude Cabela's Wholesale from leasing the

Marketplace Site.

3.      In reliance on those representations, Cabela's Wholesale: (i) terminated its efforts

to locate a viable alternative site for a retail store that it planned to open in Erie, Pennsylvania;

(ii) expended time and resources to develop the Marketplace Site; (iii) entered into intensive negotiations with Millcreek Marketplace, LLC ("Millcreek Marketplace"), the entity that owns the Marketplace Site, over the terms of a proposed lease; and (iv) began extensive preparations for the design and construction of its retail store.

4.      Right as the parties were on the precipice of a final negotiated lease, The Cafaro Company ("Cafaro"), which owns a substantial interest in Millcreek Marketplace, instructed Millcreek Marketplace to call off the negotiations.

5.      Upon information and belief, Cafaro had leveraged Cabela's Wholesale's interest in the Marketplace Site in bad faith in order to negotiate better contractual terms with an unidentified third party for either the Marketplace Site or a site at one of Cafaro's other nearby commercial properties.

6.      Cabela's Wholesale now seeks to hold Defendants responsible for their tortious actions and seeks damages from the Defendants for: (i) the business opportunities it lost as a result of Millcreek Marketplace's unexpected and unwarranted refusal to enter into a lease; (ii) its expenses associated with negotiating the lease, preparing to open a store at the Marketplace Site, and developing an engineering solution to a storm water drainage problem at the Millcreek Marketplace Shopping Center; and (iii) its attorneys' fees.

## PARTIES

7.      Plaintiff Cabela's Wholesale, Inc. is a Nebraska corporation with its principal place of business located at One Cabela Drive, Sidney, NE 69160. Cabela's Wholesale owns and operates the Cabela's-brand retail locations ("Cabela's"). Cabela's is a leading specialty retailer and the world's foremost direct marketer of hunting, fishing, camping and related outdoor merchandise.

8.      Defendant The Cafaro Company is a privately-held company with its principal place of business located at 2445 Belmont Ave., Youngstown, OH 44504.  According to its website, Cafaro is one of the nation's largest privately held shopping center developers.

9.      Defendant Millcreek Marketplace, LLC is a limited liability company with its principal place of business located at 2540 Village Common Drive, Erie, PA 16506.  Upon information and belief, Millcreek Marketplace has only two shareholders: Cafaro and Baldwin Brothers, Inc. ("Baldwin Brothers").  Baldwin Brothers is a Pennsylvania corporation with its principal place of business located in Erie, Pennsylvania.  Upon information and belief, no shareholder of Millcreek Marketplace is a citizen of Nebraska.  Millcreek Marketplace owns and leases commercial real estate at Millcreek Marketplace Shopping Center, which is located on Interchange Road between 1-79 and Peach Street in Erie, PA.

## STATEMENT OF JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendants because they have transacted, and will be transacting, business in this State and have caused harm or tortious injury in this State by acts within this State.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Cabela's Wholesale's request for relief occurred in this District.

## FACTUAL BACKGROUND

**A.     Locating the Potential Retail Sites**

13.     In or about early 2011, Cabela's Wholesale began investigating potential sites for opening a Cabela's retail outlet in Erie, Pennsylvania.  The investigation of potential sites intensified in early 2012.

14.     To accomplish that purpose, Cabela's Wholesale engaged its real estate broker, Kevin Langholz, from the firm Langholz Wilson Ellis, Inc.  Mr. Langholz acted as Cabela's Wholesale's duly authorized agent during the company's search for suitable commercial real estate in Erie.

15.     After conducting a thorough search of the area, Mr. Langholz preliminarily identified three available sites owned by Defendants that could potentially meet Cabela's Wholesale's needs.

16.     The first site (the "Pavilion Site") was located in the Millcreek Pavilion shopping center, which, upon information and belief, was, and continues to be, owned by Cafaro.

17.     The second site (the "Mall Site") was located in the Millcreek Mall, which, upon information and belief, was, and continues to be, owned by Cafaro.

18.     The third site was the Marketplace Site, which is located near and opposite both the Millcreek Mall and Millcreek Pavilion.

**B.     Investigating the Potential Retail Sites**

19.     Recognizing that Cafaro owned an interest in all of the potential sites, in or about March 2012, Cabela's Wholesale contacted Nick Morgione, Vice President of Real Estate at Cafaro, to obtain more information.

20.     Simultaneously, Cabela's Wholesale reached out to Baldwin Brothers, the other shareholder in Millcreek Marketplace, to inquire about the Marketplace Site.

21.     Following its initial discussions with Cafaro and Baldwin Brothers, Cabela's Wholesale arranged a visit to Erie to perform a preliminary on-site inspection of the three sites on or about April 24, 2012.

22.     While touring the Mall Site, Gary Rimington, Real Estate Manager at Cabela's Wholesale, and Mr. Langholz met with Mr. Morgione.

23.     During this meeting, Cabela's Wholesale learned and confirmed that the Pavilion Site had as tenants two of Cabela's competitors.  Due to restrictive covenants present in Cafaro's leases with either one or both of those competitors, Cabela's Wholesale further learned that the Pavilion Site was no longer an available option.

24.     Worried that the presence of these other retailers might pose significant problems to the development of both the Mall Site and the Marketplace Site, Messrs. Rimington and Langholz pointedly asked Mr. Morgione whether there were, or would ever be, any contractual impediments in terms of restrictive covenants to Cabela's Wholesale entering into a lease for either the Mall Site or the Marketplace Site.  Specifically, they asked whether restrictive use covenants in other of Cafaro's leases would preclude Cabela's Wholesale from entering into either space.

25.     In response, Mr. Morgione explicitly stated that there would not be any contractual impediments to a lease with Cabela's Wholesale as to either of the remaining potential sites.

26.     That same day, Cabela's Wholesale toured the Marketplace Site.  On that tour, Messrs. Rimington and Langholz met with Gregory Baldwin, President of Baldwin Brothers.

27.     At that time, Cabela's Wholesale repeated its concern that the terms of Cafaro's other leases would pose an obstacle to leasing the Marketplace Site due to its close proximity to the Millcreek Pavilion and relayed Mr. Morgione's representation to Mr. Baldwin and asked him to confirm such representation.

28.     Mr. Baldwin emphatically stated that there would be no restrictive covenants that would prevent Cabela's from moving forward with and eventually finalizing a lease for the Marketplace Site.

29.     After Cabela's Wholesale examined both the Mall Site and the Marketplace Site, it became abundantly clear that the Marketplace Site was far and away the best option due to its accessibility from several major highways, its visibility, the physical characteristics of the site, and its close proximity to other commercial spaces.

30.     As a result, Cabela's Wholesale formally rejected the Mall Site by email on July 17, 2012 and turned all of its attention to the Marketplace Site for its retail store development, including engaging in architectural site planning, storm water and other site engineering, and lease negotiations.

C.     **Architectural, Engineering and Leasing Activities for the Marketplace Site**

31.     Beginning in June 2012, Cabela's Wholesale began negotiating with Millcreek Marketplace on the terms of a letter of intent (the "Letter of Intent").

32.     As the parties negotiated the terms of the Letter of Intent, Gregory Baldwin assured Cabela's Wholesale that a final lease was imminent and that Cabela's should continue with the development of the Marketplace Site.

33.     In reliance upon all of Mr. Baldwin's and Mr. Morgione's representations that there would not be any barriers to finalizing a lease, Cabela's Wholesale began to undertake significant development activities.

34.     Cabela's Wholesale's architects drafted a site plan to ensure that the Cabela's retail store would be feasible at the Marketplace Site.

35.     Cabela's Wholesale also performed a thorough analysis of the economics of a store at the Marketplace Site to determine whether the proposed lease would be financially worthwhile.

36.     In late 2012, Baldwin Brothers alerted Cabela's Wholesale about a potential storm water permitting issue.  The lot Cabela's Wholesale was going to build on had adequate storm water capacity but an adjacent lot did not.  As a result, Cabela's Wholesale could not begin construction until this threshold site engineering issue was resolved.

37.     Cabela's Wholesale immediately engaged its engineers to devise a solution to this storm water problem.

38.     In or about February 2012, Cabela's Wholesale's engineers successfully formulated a plan that would allow both lots to be developed and started working with Pennsylvania's Department of Environmental Quality to obtain the proper permits.

39.     This activity directly benefitted Millcreek Marketplace.

40.     On January 9, 2013, Jamie Gull, Senior Director of Real Estate for Cabela's Wholesale, executed the Letter of Intent on behalf of Cabela's Wholesale and forwarded it to Baldwin Brothers.

41.     On February 28, 2013, Matthew Baldwin returned a signed copy of the Letter of Intent on behalf of Millcreek Marketplace to Mr. Langholz.

42.    The Letter of Intent specified the general terms and conditions under which Millcreek Marketplace would lease the Marketplace Site to Cabela's Wholesale.

43.    On March 1, 2013, Mr. Rimington sent a draft of the proposed Land Lease by and between Millcreek Marketplace and Cabela's Wholesale to Matthew Baldwin. The proposed lease contained terms consistent with those set forth in the Letter of Intent.

44.    On March 20, 2013, Gregory Baldwin returned a revised copy of the proposed lease noting that there remained a few outstanding open items regarding governmental approvals that needed to be addressed by the proposed lease before it would be acceptable to Millcreek Marketplace.

45.    On March 27, 2013, Mr. Rimington sent an email response to Millcreek Marketplace's proposed revisions to the lease. In this email, Mr. Rimington stressed that he believed it would be beneficial to both parties if a conference call could be scheduled within a day or two to resolve all outstanding issues. The hope was that the lease would be finalized during that call.

**D.    Millcreek Marketplace Abruptly Calls Off the Negotiations**

46.    In late March 2013, Greg Baldwin placed a call to Mr. Langholz.

47.    On that call, Mr. Baldwin informed Mr. Langholz that Millcreek Marketplace would no longer be pursuing a lease with Cabela's Wholesale. According to Mr. Baldwin, Cafaro had entered into a contract with an unknown third party that, by its terms, prohibited Millcreek Marketplace from leasing the Marketplace Site to Cabela's Wholesale.

48.    Shocked and disturbed by this news, Mr. Gull subsequently followed up with Mr. Baldwin in an effort to obtain more information about this purported Cafaro contract. Mr. Baldwin refused to provide any details.

49.    Mr. Gull reminded Mr. Baldwin of his assurances that there would not be any contractual impediments to the parties finalizing a lease for the Marketplace Site and that Cabela's Wholesale should press forward with the development of its store. Mr. Baldwin replied that the decision was out of his hands and that all leases involving the Marketplace Site must be approved by Cafaro.

50.    Mr. Baldwin added that he was "not pleased" with the actions of Cafaro and that he "could not believe that Cafaro had put him in such a difficult position."

51.    At the time Millcreek Marketplace broke off the lease negotiations, Cabela's Wholesale had already invested hundreds of thousands of dollars to develop the Marketplace Site.

52.    In fact, Cabela's Wholesale had already completed its building design and had begun making construction preparations.

53.    To date, Cabela's Wholesale has been unable to locate a suitable replacement site in the Erie market.

## LEGAL CLAIMS

### COUNT I
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Plaintiff v. Cafaro)

54.    The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

55.    Cabela's Wholesale and Millcreek Marketplace are parties to the Letter of Intent.

56.    Pursuant to that agreement, Cabela's Wholesale negotiated the terms of a proposed final lease with Millcreek Marketplace in good faith and otherwise had a business

relationship with Millcreek Marketplace whereby Cabela's sought to lease the Marketplace Site from Millcreek Marketplace for an initial term of twenty years.

57.     Upon information and belief, Cafaro intentionally and without justification or privilege interfered with Cabela's Wholesale's prospective contractual relationship with Millcreek Marketplace by entering into a contract with an unknown third party that contained restrictive covenants which prevented Cabela's Wholesale from leasing the Marektplace Site.

58.     As a result of Cafaro's conduct, Cabela's Wholesale has suffered damage.

**WHEREFORE**, Plaintiff Cabela's Wholesale respectfully requests that this Court enter judgment in its favor and against The Cafaro Company in a fair and reasonable amount to be determined at trial, plus interest, costs, and attorneys' fees, together with any further and additional relief that this Court may deem just and proper.

## COUNT II
## FRAUDULENT MISREPRESENTATION

### (Plaintiff v. Defendants)

59.     The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

60.     Defendants fraudulently and intentionally misrepresented to Cabela's Wholesale that there was not, nor would there ever be, any contractual impediments that would prevent Cabela's Wholesale from entering into a lease for the Marketplace Site. Specifically, Defendants misrepresented that there would be no restrictive covenants relating to competitors that would preclude Cabela's Wholesale from leasing the Marketplace Site.

61.     When the misrepresentations were made, however, Defendants knew that an anti-competitive contractual term that would preclude Cabela's Wholesale from entering the Marketplace Site was something that Cafaro was already negotiating or considering negotiating.

62. Cabela's Wholesale justifiably relied upon Defendants' misrepresentations.

63. If Cabela's Wholesale had known the falsity of Defendants' misrepresentations, the company would have never considered the Marketplace Site and would have immediately discontinued all of its development activities.

64. As a direct and proximate result of Defendants' misrepresentations, Cabela's Wholesale was induced to incur substantial out-of-pocket costs, including money spent vetting the Marketplace Site, resolving the storm water permitting issue, designing a retail location according to the Marketplace Site's specifications, the opportunity cost of pursuing a lease with the Marketplace Site as opposed to other potential sites, the lost business opportunity of opening a store in the highly desirable Erie market, and attorneys' fees.

**WHEREFORE**, Plaintiff Cabela's Wholesale respectfully requests that this Court enter judgment in its favor and against Defendants in a fair and reasonable amount to be determined at trial, plus interest, costs, and attorneys' fees, together with any further and additional relief that this Court may deem just and proper.

### COUNT III
### NEGLIGENT MISREPRESENTATION

#### (Plaintiff v. Defendants)

65. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

66. Cabela's Wholesale brings Count III in the alternative to Count II.

67. During the process of investigating the Marketplace Site, Cabela's Wholesale explicitly asked Defendants whether there would ever be any restrictive covenants that would prevent Cabela's Wholesale from moving forward with and eventually finalizing a lease for the Marketplace Site.

68.     As a result, Defendants had a duty to disclose whether any such covenants would ever preclude Cabela's Wholesale from opening a retail location at the Marketplace Site.

69.     Defendants misrepresented that there would be no contractual impediments to Cabela's Wholesale entering into a lease for the Marketplace Site.

70.     Cabela's Wholesale justifiably relied upon Defendants' misrepresentations.

71.     At all times, Defendants were aware of Cabela's Wholesale's reliance on their misrepresentations yet failed to correct the faulty information they provided.

72.     As a direct and proximate result of Defendants' misrepresentations, Cabela's Wholesale was induced to incur substantial out-of-pocket costs, including money spent vetting the Marketplace Site, resolving the storm water permitting issue, designing a retail location according to the Marketplace Site's specifications, the opportunity cost of pursuing a lease with the Marketplace Site as opposed to other potential sites, the lost business opportunity of opening a store in the highly desirable Erie market, and attorneys' fees.

**WHEREFORE**, Plaintiff Cabela's Wholesale respectfully requests that this Court enter judgment in its favor and against Defendants in a fair and reasonable amount to be determined at trial, plus interest, costs, and attorneys' fees, together with any further and additional relief that this Court may deem just and proper.

## COUNT IV
## DETRIMENTAL RELIANCE

### (Plaintiff v. Defendants)

73.     The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

74.     Defendants promised that there was not, nor would there ever be, any contractual impediments that would prevent Cabela's Wholesale from entering into a lease for the Marketplace Site.

75.     Millcreek Marketplace further advised Cabela's Wholesale that they were in basic agreement with the proposed lease terms outlined in the Letter of Intent for the Millcreek Site and that Cabela's Wholesale should proceed with the planning and development of the Cabela's retail location that would eventually be built at the Marketplace Site.

76.     Millcreek Marketplace cooperated with Cabela's Wholesale as the company finalized its design plans.

77.     Cabela's Wholesale reasonably relied on the representations made by Defendants and, consequently, suffered damages.

78.     As a direct and proximate result of Millcreek Marketplace's various representations, Cabela's Wholesale incurred substantial out-of-pocket costs, including money spent vetting the Marketplace Site, resolving the storm water permitting issue, designing a retail location according to the Marketplace Site's specifications, the opportunity cost of pursuing a lease with the Marketplace Site as opposed to other potential sites, the lost business opportunity of opening a store in the highly desirable Erie market, and attorneys' fees.

**WHEREFORE**, Plaintiff Cabela's Wholesale respectfully requests that this Court enter judgment in its favor and against Defendants in a fair and reasonable amount to be determined at trial, plus interest, costs, and attorneys' fees, together with any further and additional relief that this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil procedure 38(b), Cabela's Wholesale hereby demands a trial by jury on all issues triable of right by a jury.

Dated: April 25, 2013

Respectfully submitted:

Thomas E. Birsic (Pa. I.D. 31092)
James P. Angelo (Pa. I.D. 306430)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500
(412) 355-6501 (fax)
Email: thomas.birsic@klgates.com
        james.angelo@klgates.com

*Attorneys for Cabela's Wholesale, Inc.*