IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CABELA'S WHOLESALE, INC., | ) |
| Plaintiff | ) Docket No. 1:13-CV-00118-SJM |
| v. | ) (Assigned to Chief Judge Sean J. McLaughlin) |
| MILLCREEK MARKETPLACE, LLC and THE CAFARO COMPANY, | ) ELECTRONICALLY FILED PLEADING |
| Defendants | ) **BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

Filed on behalf of: Defendants,
Millcreek Marketplace, LLC and
The Cafaro Company

Counsel of Record for these Defendants:

Richard A. Lanzillo, Esq.
PA ID No. 53811
Knox McLaughlin Gornall & Sennett, P.C.
120 West Tenth Street
Erie, PA 16501
Telephone (814) 459-2800
Facsimile (814) 453-4530
Email rlanzillo@kmgslaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CABELA'S WHOLESALE, INC., ) | Docket No. 1:13-CV-00118-SJM |
| ) | |
| Plaintiff ) | (Assigned to Chief Judge Sean J. McLaughlin) |
| ) | |
| v. ) | |
| ) | |
| MILLCREEK MARKETPLACE, LLC and ) | |
| THE CAFARO COMPANY, ) | |
| ) | |
| Defendants ) | |

**<u>BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

**I.   INTRODUCTION**

Plaintiff, Cabela's Wholesale, Inc. ("Cabela's"), begins its Complaint by alleging that Defendants, Millcreek Marketplace, LLC and The Cafaro Company, wrongfully induced it "to make substantial investments totaling over $400,000 in a site [(the "Marketplace Site")] at the Millcreek Marketplace Shopping Center" (the "Marketplace Shopping Center") by means of assurances "that there was not, nor would there ever be, any contractual impediments to finalizing a lease for the Marketplace Site." (Complaint ¶¶1-2). Beyond this histrionic introduction, the Complaint reveals that Cabela's claims are based upon lease negotiations that ultimately failed to result in an actual lease agreement. The Complaint acknowledges that Cabela's and Millcreek Marketplace, LLC stated the nature and terms of their lease negotiations

in a "Letter of Intent" dated February 28, 2013 (the "Letter of Intent").[1] (Complaint ¶¶31-32, 40-41)  However, Cabela's omits any reference to the actual language of the Letter of Intent, including the clause entitled "No Option," which states in pertinent part:

> ***Until and unless a Lease for the Demised Premises is executed between [Millcreek Marketplace, LLC] and [Cabela's], neither this proposal nor any other negotiations between the parties shall be deemed binding, and this proposal shall not be deemed to create an option of, or reservation of, the Demised Premises to [Cabela's].***

Letter of Intent, Ex. A to Motion to Dismiss, p. 6. (emphasis supplied).[2]

Cabela's Complaint does ***not*** allege that it and Millcreek Marketplace, LLC entered into an actual lease agreement for the Marketplace Site.  Further, Cabela's does ***not*** allege that Millcreek Marketplace, LLC agreed to withdraw the Marketplace Site from the commercial real estate market, refrain from marketing the site to others, or discontinue negotiations with any other prospective tenant.  Instead, Cabela's bases its claims upon the decision by Millcreek Marketplace LLC to lease the Marketplace Site to "an unknown third party."  (Complaint ¶47)  Because the Letter of Intent clearly and unambiguously acknowledges that neither it nor the parties' negotiations would be binding unless and until the parties executed a formal lease agreement and that Millcreek Marketplace, LLC was not granting an option on, or reservation of, the Marketplace Site to Cabela's, Millcreek Marketplace, LLC was free to lease or sell the premises to a third party.  Accordingly, a decision to lease the Marketplace Site or any other area within the Marketplace Shopping Center to a third party cannot support liability on the part of

---

[1]  Although Cabela's refers to this document as a "Letter of Intent," the actual title of the document is "Proposal."  In fact, the words "Letter of Intent" do not appear anywhere in the document.  However, rather than argue over labels, Defendants shall focus on the substance of the document, which is dispositive of Cabela's claims in this case.

[2]  As noted below, although a district court ruling on a motion to dismiss normally may not consider matters extraneous to the pleadings, "an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

Millcreek Marketplace, LLC or The Cafaro Company under any theory asserted in the Complaint.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McTernan v. City of York, Pa.,* 577 F.3d 521, 530 (3d Cir. 2009) *(quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Although the court must accept as true all of the complaint's factual allegations and reasonable inferences drawn therefrom, it "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 184 (3d Cir. 2000) *(quoting City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n.13 (3d Cir. 1998)). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.,* 114 F. 3d at 1426 (citations omitted). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (citations omitted). "Further, 'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document.'" *Schnell v. Bank of N.Y. Mellon,* 828 F. Supp. 2d 798, 803 (E.D. Pa. 2011), *(quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)); *State College Area Sch. Dist. v. Royal Bank of Can.,* 825 F. Supp. 2d 573, 585 (M.D. Pa. 2011).

### III. FACTUAL ALLEGATIONS OF THE COMPLAINT

Cabela's describes itself as "a leading specialty retailer and the world's foremost direct marketer of hunting, fishing, camping and related outdoor merchandise." (Complaint ¶7) Cabela's alleges that, in or about early 2011, it began investigating sites for opening a retail outlet in Erie, Pennsylvania, and that its investigation of potential sites intensified in early 2012. (Complaint ¶13) This investigation identified three available sites owned by the Defendants that could potentially meet Cabela's needs. (Complaint ¶15) The three sites identified by Cabela's were the Marketplace Site and two sites allegedly owned by The Cafaro Company: a site in the Millcreek Pavilion shopping center ("Pavilion Site") and a site within the Millcreek Mall ("Mall Site"). (Complaint ¶¶16-18) Cabela's alleges that it contacted Nick Morgione ("Morgione"), Vice President of Real Estate at The Cafaro Company, regarding the sites and "reached out to Baldwin Brothers, the other shareholder in Millcreek Marketplace, to inquire about the Marketplace Site." (Complaint ¶¶19-20) During a subsequent visit to Erie on April 24, 2012, Cabela's real estate broker, Kevin Langholz ("Langholz"), from the firm of Langholz Wilson Ellis, Inc., and Cabela's Real Estate Manager, Gary Rimington ("Rimington"), allegedly learned that the Pavilion Site was not available because restrictive covenants in the existing leases of two tenants of that shopping center precluded leasing of a site within that shopping center to a competitor such as Cabela's. (Complaint ¶¶21-23)

Cabela's alleges that this information raised concerns that similar restrictions in other Cafaro leases might preclude Cabela's from leasing the Mall Site and the Marketplace Site, and that Rimington and Langholz "pointedly asked Morgione whether there were, or ever would be, any contractual impediments in terms of restrictive covenants to Cabela's Wholesale entering into a lease for either the Mall Site or the Marketplace Site." (Complaint ¶24) According to the Complaint, Morgione "explicitly stated that there would not be any contractual impediments to a lease with Cabela's Wholesale as to either the remaining potential sites." (Complaint ¶25) The Complaint further alleges that, later that same day, Gregory Baldwin ("Baldwin"), President of Baldwin Brothers, confirmed the accuracy of Morgione's representation that "there would be no restrictive covenants that would prevent Cabela's from moving forward with and eventually finalizing a lease for the Marketplace Site." (Complaint ¶¶27-28)

Cabela's ultimately decided that it preferred the Marketplace Site over the Mall Site due to its accessibility from several major highways, its visibility, the physical characteristics of the site and its close proximity to other commercial spaces. (Complaint ¶29) Although Cabela's began negotiating with Millcreek Marketplace over a letter of intent in June, 2012, it did not formally reject the Mall Site until July 17, 2012.[3] (Complaint ¶¶30-31) In addition, Cabela's acknowledges in its Complaint that the negotiations between Cabela's and Millcreek Marketplace, LLC continued until they executed a Letter of Intent dated February 28, 2013. (Complaint ¶41) Nevertheless, Cabela's Complaint further acknowledges that, before the Letter of Intent was executed, it undertook substantial development investigation and work, including its architects' drafting of a site plan to ensure the feasibility of the Marketplace Site, and its engineers' formulation of a storm water management plan. (Complaint ¶¶34-38)

---

[3] The Complaint further acknowledges that Cabela's understood that the Marketplace Site and the Mall Site are owned by different entities and, thus, represented alternative sites for tenants such as Cabela's. (Complaint ¶¶9, 17)

Cabela's Complaint acknowledges that the "Letter of Intent specified the general terms and conditions under which Millcreek Marketplace would lease the Marketplace Site to Cabela's Wholesale." (Complaint ¶42) Remarkably, however, Cabela's fails to attach a copy of the Letter of Intent to its Complaint or reference any of its language. These omissions are likely explained by the terms of the Letter of Intent—in particular, the clause entitled "No Option," which appeared in every draft of the Letter of Intent exchanged by the parties between June, 2012 and February 28, 2013, and expressly provided, "***Until and unless a Lease for the Demised Premises is executed between Landlord [Millcreek Marketplace, LLC] and Tenant [Cabela's], neither this proposal nor any other negotiations between the parties shall be deemed binding, and this proposal shall not be deemed to create an option of, or reservation of, the Demised Premises to Tenant.***" Letter of Intent, Ex. A to Motion to Dismiss, p. 6.

Cabela's Complaint goes on to allege that, after executing the Letter of Intent, the parties exchanged drafts of a "proposed Land Lease." (Complaint ¶¶43-45) However, Cabela's acknowledges that it and Millcreek Marketplace, LLC never reached agreement on the terms of the lease. (Complaint ¶45) In fact, Cabela's alleges that the last substantive communication between it and Millcreek Marketplace, LLC regarding the terms of a possible lease was an email sent by Rimington to Baldwin on March 27, 2013 in response to Millcreek Marketplace LLC's proposed revisions to a draft lease agreement. (Complaint ¶45) According to Cabela's Complaint, "In this email, Mr. Rimington stressed that he believed it would be beneficial to both parties if a conference call could be scheduled within a day or two to resolve all outstanding issues." (Complaint ¶45) Here, again, Cabela's is beyond coy in its failure to attach the subject email or quote its actual language. The March 27, 2013 email from Rimington to Baldwin actually states:

> Greg, attached is our response to your lease comments. ***There are several legal items that we are unable to compromise on.*** It would be best to quickly get all parties involved on a conference call Thursday or Friday so we can reach an agreement. Please let me know a time that will work for your team.
>
> Gary Rimington
> Real Estate Manager

March 27, 2013 Email from Rimington to Baldwin, Ex. B to Motion to Dismiss (hereinafter, "the No Compromise email")(emphasis supplied).

Cabela's further acknowledges that, after Rimington sent his March 27, 2013 No Compromise email, Baldwin advised Langholz that Millcreek Marketplace, LLC would no longer be pursuing a lease with Cabela's as it had entered into a contract (i.e., a lease encompassing the Marketplace Site) with a third party, which made it impossible for Millcreek Marketplace, LLC to lease **the same premises** to Cabela's. (Complaint ¶47)

### III. DISCUSSION

**A. Count II of Cabela's Complaint fails to state a plausible fraudulent misrepresentation claim.**

To state a claim for fraud under Pennsylvania law, a plaintiff must allege facts to support each of the following six elements: 1) a misrepresentation of existing fact, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance. *Overall v. Univ. of Pa.,* 412 F.3d 492, 498 (3d Cir. 2005) *(quoting Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa. 1994)); *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,* 401 F.3d 123, 136 (3d Cir. 2005)(citing *Viguers v. Philip Morris USA, Inc.,* 837 A.2d 534 (Pa.Super.Ct. 2003)). Under Pennsylvania law, promises to do future acts are incapable of sustaining a claim for fraud; instead, the claim must be based upon statements of existing fact that were false when made. *Wood v. R.R.*

7

*Donnelley & Sons Co.,* 888 F.2d 313, 319 (3d Cir. 1989) *(citing Nissenbaum v. Farley,* 380 Pa. 257, 110 A.2d 230 (1955)). Pennsylvania law recognizes the "principle that 'a breach of faith or an agreement regarding the doing or refraining from doing something in the future is not fraud...'" *Wood,* 888 F.2d at 319 *(citing Sokoloff v. Strick,* 404 Pa. 343, 350, 172 A.2d 302, 305 (1961). In addition, proximate cause is an essential element of both fraudulent misrepresentation and negligent misrepresentation claims. *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 445 (3d Cir. 2000).

In the present case, Cabela's alleges that, on April 24, 2012, the Defendants represented that no contractual impediments in the form of restrictive covenants existed, or would come to exist, to preclude a lease between Cabela's and Millcreek Marketplace, LLC. This alleged representation does not support a plausible claim of fraud or misrepresentation, particularly when read in the context of the entire Complaint. First, Cabela's does not allege that any restrictive covenant existed at the time the Defendants made the representation or at any time it and Millcreek Marketplace were engaged in negotiations for a possible lease of the Marketplace Site. In other words, ***Cabela's does not allege that the Defendants' statements were false when made or at any time before Millcreek Marketplace, LLC leased the Marketplace Site to another prospective tenant.*** The "impediment" to Millcreek Marketplace, LLC's leasing of the Marketplace Site to Cabela's was not a restrictive covenant. Rather, the impediment arose when Millcreek Marketplace, LLC leased the Site to another prospective tenant. 4

---

4     Cabela's does not allege that, as of April 24, 2012, any restrictive covenants existed that would have precluded it from leasing the Marketplace Site. Cabela's does not allege that any" impediment" to a lease of the Marketplace Site existed until "late March, 2013," following Rimington's March 27, 2013 email to Baldwin. (Complaint ¶46). Although Cabela's is again coy in its pleading, the "impediment" that arose as of this date was the fact that Millcreek Marketplace, LLC had leased the Marketplace Site to another prospective tenant. Thus, the alleged representations that no restrictive covenants precluded a lease with Cabela's remained true at all times when the parties were engaged in negotiations regarding a possible lease of the Marketplace Site.

8

Cabela's claim is a transparent attempt to avoid the consequences of the "No Option" provision of the Letter of Intent it negotiated and executed. Cabela's position would require the Court to convert the "no restrictive covenant" representations allegedly made on April 24, 2012 into an obligation to reserve the Marketplace Site for Cabela's and remove the site from the market. However, on February 28, 2013, Cabela's expressly agreed that no such obligation existed. It specifically agreed that Millcreek Marketplace, LLC was not reserving the Marketplace Site for Cabela's or granting it an option on the Marketplace Site and that neither it nor Millcreek Marketplace, LLC would be bound to any lease transaction unless and until the parties executed an actual lease agreement. "Under Pennsylvania law, when one party has expressed an intent not to be bound until a written contract is executed, the parties are not bound until that event has occurred." *Schulman v. J.P. Morgan Inv. Management*, 35 F.3d 799, 808 (3d Cir. 1994) (*citing Essner v. Shoemaker*, 393 Pa. 422, 143 A.2d 364 (1958)). In the present case, **both parties** clearly expressed their mutual intent not to be bound unless and until they executed a written lease agreement. The clear and unambiguous terms of the Letter of Intent preclude any assertion that Millcreek Marketplace, LLC had an obligation to refrain from leasing the Marketplace Site to a third party and belie any notion that Cabela's reasonably could have understood otherwise. The alleged representations on April 24, 2012 concerning the non-existence of restrictive covenants were true when made and cannot plausibly be contorted into a binding obligation not to lease the Marketplace Site to another prospective tenant. Cabela's does not allege that the Defendants agreed to withdraw the Marketplace Site from the commercial real estate market or promised not to offer the Marketplace Site to other prospective tenants. The subsequent Letter of Intent executed by Cabela's memorializes the parties' mutual understanding that Millcreek Marketplace, LLC was not granting a reservation of, or option upon, the Marketplace Site to

9

Cabela's. Whether Cabela's desired to have such rights is irrelevant. Cabela's does not allege, and, in light of the Letter of Intent, cannot allege that the Defendants granted any such rights to it.

Cabela's lack of justifiable reliance provides a further basis for dismissal of Cabela's fraud claim. An essential element of any misrepresentation claim is that "injury must result to the party acting in justifiable reliance on the misrepresentation." *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994). Pennsylvania "case law clearly holds that a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) (*citing 1726 Cherry St. Partnership v. Bell Atlantic Properties*, 653 A.2d 663, 669 (Pa. Super. Ct. 1995). Here, Cabela's relies on oral representations allegedly made during the negotiation of the Letter of Intent that Cabela's acknowledges stated the terms of their understanding. The Letter of Intent specifically disclaims any promise or representation, including any obligation to reserve the Marketplace Site for Cabela's. Thus, Cabela's Complaint makes clear that any expenses incurred by Cabela's were incurred with the understanding that neither it nor Millcreek Marketplace, LLC would have any binding obligation to the other unless and until the parties executed a lease agreement. Cabela's clearly and unambiguously recited this in the Letter of Intent. Cabela's Complaint also acknowledges that it is a sophisticated commercial enterprise— "a leading specialty retailer and the world's foremost direct marketer of hunting, fishing, camping and related outdoor merchandise." (Complaint ¶7) Cabela's was indisputably capable of understanding the clear and unambiguous terms of the Letter of Intent and the fact that Millcreek Marketplace, LLC had not agreed to remove the Marketplace Site from the real estate market or otherwise reserved the property for Cabela's. Therefore, any costs incurred by Cabela's in anticipation of a possible lease of the property were incurred with the understanding that it was

not promised or guaranteed the Marketplace Site. Thus, whatever expenses Cabela's incurred in evaluating the Marketplace Site for a possible lease were costs of doing business that Cabela's unambiguously assumed and confirmed in the Letter of Intent. Accordingly, Count II of Cabela's Complaint must be dismissed with prejudice.

**B.  Count III of Cabela's Complaint fails to state a plausible negligent misrepresentation claim.**

In *Miliken v. Jacono,* 60 A.3d 133, 2012 PA Super 284, 2012 WL 6684757, at *7 (Pa. Super. 2012), the Pennsylvania Superior Court identified the elements necessary to state a claim for negligent misrepresentation, as follows:

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Id.* (*quoting Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002)).

Cabela's negligent misrepresentation claim fails for the same reasons as its fraud claim. Cabela's has identified no actionable misrepresentation; the Letter of Intent establishes that neither it nor Millcreek Marketplace, LLC intended a binding relationship prior to an executed lease; and Cabela's understood and agreed that Millcreek Marketplace, LLC was not withdrawing the Marketplace Site from the market or reserving the Site for Cabela's; and any costs incurred by Cabela's were costs of doing business rather than the product of justifiable reliance upon any alleged representation of the Defendants. Further, the Complaint does not allege that the representations at issue were false when made or at any time during the parties'

negotiations concerning a possible lease of the Marketplace Site. Cabela's apparent disappointment that the parties did not reach a final agreement on a lease and that another prospective tenant secured the Marketplace Site does not provide a basis for a misrepresentation claim. Accordingly, Count III of Cabela's Complaint must be dismissed with prejudice.

**C.    Count I of Cabela's Complaint fails to state a plausible tortious interference with prospective economic advantage claim.**

Count I of Cabela's Complaint purports to assert a claim against The Cafaro Company for tortious interference with prospective economic advantage. The Supreme Court of Pennsylvania recognizes two distinct torts with respect to tortious interference with contract, one for existing contractual rights and another for prospective contractual relations. *See US. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 925 (3d Cir. 1990). Cabela's claim is based only upon prospective contractual relations.

In Pennsylvania, a plaintiff must show the following elements to state a claim for tortious interference with prospective contractual relations: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage resulting from the defendant's conduct. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 471 (1979). "The plaintiff also must plead and prove 'a reasonable likelihood or probability that the anticipated business relationship will be consummated.'" *Int'l Diamond Imps., Ltd. v. Singularity Clark*, L.P., 40 A.3d 1261, 1275 (Pa. Super. Ct. 2012)(citation omitted). "The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking." *Id.* at 1275 n.14.

In light of the "No Option" clause of the Letter of Intent, Cabela's cannot allege that it had a reasonable expectation of a future contractual relationship with Millcreek Marketplace, LLC. Cabela's expressly understood that Millcreek Marketplace, LLC was not withdrawing the Marketplace Site from the commercial real estate market and that neither it nor Millcreek Marketplace, LLC would be bound unless and until they signed a mutually acceptable written lease. Further, Rimington's March 27, 2013 "No Compromise" email to Baldwin belies any reasonable expectation of future contractual relationship.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McTernan*, 577 F.3d at 530 (*quoting Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted)). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Cabela's Complaint does little more than recite legal conclusions that The Cafaro Company's act of entering into a third party contract precluded Cabela's from pursuing a lease of the Marketplace Site. As the sole allegation in support of its claim, Cabela's asserts "[u]pon information and belief, Cafaro intentionally and without justification or privilege interfered with Cabela's Wholesale's prospective contractual relationship with Millcreek Marketplace by entering into a contract with an unknown third party that contained restrictive covenants which prevented Cabela's Wholesale from leasing the Marketplace Site." (Complaint ¶57) In the factual averments of the Complaint, however, Cabela's does *not* allege that Baldwin said anything about a "restrictive covenant" precluding Cabela's lease of the Marketplace Site. Rather, according to the Complaint, Baldwin advised Langholz that The Cafaro Company, which Cabela's acknowledges is one of the owners of Millcreek Marketplace, LLC, had notified Baldwin that it had entered into a contract with a third party that, "by its terms, prohibited Millcreek Marketplace from leasing the Marketplace Site to

13

Cabela's Wholesale." (Complaint ¶47) Thus, Cabela's is engaging in pure speculation when it alleges that a "restrictive covenant" is the impediment that precluded it from leasing the Marketplace Site. *Twombly* and its progeny preclude this type of speculative pleading, particularly in a case such as this where the speculation is implausible. The only plausible contractual impediment to leasing the Marketplace Site to Cablela's is the fact that the site had been leased to another tenant and, therefore, was no longer available. Regardless, Cabela's also alleges insufficient facts to support a reasonable inference that The Cafaro Company acted with the purpose or intent to harm Cabela's and without a privilege or justification supporting its actions or that Cabela's had a reasonable expectation of a future contractual relationship with Millcreek Marketplace, LLC.

In addition, in order to plead an intentional interference claim, the plaintiff must identify three parties — two contracting parties and an interfering party. *Reading Radio, Inc. v. Fink, 2003 PA Super*, 353, 833 A.2d 199, at 210 (Pa. Super. Ct. 2003). Because a corporation or other business entity acts through its agents and officers, such agents and officers are not liable for interference with a corporate contract when acting in their official capacities. *Wagner v. Tuscarora School Distr.*, No. Civ.A. 1:04-CV-1133, 2006 U.S. Dist. LEXIS 97582, 2006 WL 167731, *12 (M.D. Pa. Jan. 20, 2006) (*citing Killian v. McCulloch*, 850 F. Supp. 1239, 1251 (E.D. Pa. 1994)); *Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa.1984) (finding the overwhelming weight of authority in Pennsylvania is that a corporate officer, director, trustee or other management level agent is not personally liable for tortious interference.).

The Complaint identifies The Cafaro Company as one of two shareholders of Millcreek Marketplace, LLC. (Complaint ¶9) Having identified The Cafaro Company as one of the two owners of Millcreek Marketplace, LLC, Cabela's goes on to allege that The Cafaro Company tortiously interfered with Cabela's prospective economic advantage by entering into a lease for the

Marketplace Site with an unknown third party. In effect, Cabela's is alleging that The Cafaro Company used its authority as an owner-agent of Millcreek Marketplace, LLC to lease the Marketplace Site to another prospective tenant—a right guaranteed to Millcreek Marketplace, LLC under the "No Option" clause of the Letter of Intent. As Pennsylvania law makes clear, The Cafaro Company, as an owner-agent of Millcreek Marketplace, LLC, cannot interfere with an existing or prospective contract of Millcreek Marketplace, LLC.

Finally, as noted, "to recover on a tortious intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts." *Acumed LLC v. Advanced Surgical Servs.,* 561 F.3d 199, 214 (3d Cir. 2009). "While some jurisdictions consider a justification for a defendant's interference to be an affirmative defense, Pennsylvania courts require the plaintiff, as part of his prima facie case, to show that the defendant's conduct was not justified." *Id. (quoting Triffin v. Janssen,* 426 Pa. Super. 57, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993) (additional citations omitted). Here, Cabela's allegations do not support an inference of any improper conduct by The Cafaro Company or conduct that would not be considered privileged or justified under Pennsylvania law. The Cafaro Company's act of introducing another prospective tenant to the Marketplace Site and that prospective tenant's execution of a lease for the premises are actions expressly permitted by the Letter of Intent executed by Cabela's. On the essential elements of third party interference, improper purpose and privilege, Cabela's allegations in support of its tortious interference claim fail to raise a right to relief above the speculative level. Therefore, under *Twombly* and its progeny, Count I of the Complaint fails to state a claim upon which relief can be granted and, therefore, must be dismissed with prejudice.

**D. Count IV of the Complaint fails to state a plausible "detrimental reliance" claim.**

Count IV of Cabela's Complaint asserts a claim under the heading of "detrimental reliance." This claim largely duplicates Cabela's fraud and negligent misrepresentation claims. "[W]hile some courts use the phrases promissory estoppel and detrimental reliance interchangeably, some courts construe detrimental reliance as an element of a cause of action for promissory estoppel." *Kraus Indus. v. Moore*, 2007 U.S. Dist. LEXIS 68869 at *22 n.6 (W.D. Pa. Sept. 18, 2007) (*citing Raykhman v. Digital Elevator Co.*, 1993 U.S. Dist. LEXIS 13112, 1993 WL 370988, at *6 (E.D. Pa. Aug. 30, 1993); *Rost v. National R. Passenger Corp.*, 1992 U.S. Dist. LEXIS 13130, 1992 WL 220995, at *7 (E.D. Pa. Aug. 31, 1992) ("**Detrimental reliance** is a *sine qua non* of any promissory estoppel cause of action") (emphasis in original)).

"Under Pennsylvania law, the elements for a promissory estoppel or detrimental reliance claim are: '(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.'" *Kraus Indus.*, 2007 U.S. Dist. LEXIS 68869 at *23 (citations omitted); *see also C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) (Pennsylvania adopts promissory estoppel doctrine embodied in Restatement (Second) of Contracts § 90). The doctrine of promissory estoppel is applied "to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Kraus Indus.*, 2007 U.S. Dist. LEXIS 68869 at *23 (citations omitted).

In the present case, Cabela's promissory estoppel/detrimental reliance claim fails based upon many of the same defects that doom its fraud, misrepresentation and tortious interference claims. Cabela's does not allege that Millcreek Marketplace, LLC ever promised to reserve the Marketplace Site

16

for Cabela's. In fact, Cabela's expressly agreed that this was never its expectation. As noted, within the Letter of Intent, which reflected several months of negotiations, Cabela's agreed that neither it nor Millcreek Marketplace, LLC intended a binding relationship or a promise that could be relied upon prior to the execution of a formal lease and that Millcreek Marketplace, LLC was not withdrawing the Marketplace Site from the market or reserving the Site for Cabela's. In light of these express, clear and unambiguous terms, Cabela's cannot plausibly contend that it detrimentally relied upon vague and general statements concerning the lack of "contractual impediments" in the form of restrictive covenant as a basis for imposing upon Millcreek Marketplace, LLC an obligation not to lease the Marketplace Site to a prospective tenant other than Cabela's.

     In the present case, Cabela's has specifically alleged the existence of the Letter of Intent. The Letter of Intent specifically addresses the subject matter of Cabela's promissory estoppel/detrimental reliance claim—i.e., whether Millcreek Marketplace, LLC had agreed to withdraw the Marketplace Site from the market or reserve the Site for Cabela's. The Letter of Intent specifically recites that no such agreement exists. Having expressly dealt with these matters in the Letter of Intent, Cabela's cannot evade the unambiguous terms of its agreement under a contradictory theory of promissory estoppel or detrimental reliance. Count IV of the Complaint fails to state a claim upon which relief can be granted and, therefore, must be dismissed with prejudice.

## IV. CONCLUSION

For the reasons discussed herein, Defendants, Millcreek Marketplace, LLC and The Cafaro Company, respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.

By: */s/ Richard A. Lanzillo*
    Richard A. Lanzillo, Esq.
    PA ID #: 53811
    120 West Tenth Street
    Erie, PA  16501-1461
    Telephone: (814) 459-2800
    Fax: (814) 453-4530
    Email:  rlanzillo@kmgslaw.com

    Attorneys for Defendants,
    Millcreek Marketplace, LLC and
    The Cafaro Company

# 1380259.v1