# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CABELA'S WHOLESALE, INC.,    )
    )
    Plaintiff,    )    Case No. 1:13-cv-00118
    )
    v.    )    JUDGE SEAN J. MCLAUGHLIN
    )
MILLCREEK MARKETPLACE, LLC    )
and THE CAFARO COMPANY,    )
    )
    Defendants.    )
    )

## PLAINTIFF CABELA'S WHOLESALE, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

**K&L GATES LLP**

Thomas E. Birsic (Pa. ID 31092)
James P. Angelo (Pa. ID 306430)
Sarah A. Bronder (Pa. ID 314495)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

*Counsel for Cabela's Wholesale, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND .................................................................................... 3

III. LEGAL STANDARD ............................................................................................... 5

IV.  ARGUMENT .............................................................................................................. 6

    A.   The "No Option" Clause in the Letter of Intent Does Not Preclude Cabela's Wholesale's Misrepresentation and Detrimental Reliance Claims in Counts II through IV of the Complaint. ............................................................................. 6

        1.   The Terms of the Letter of Intent Have No Bearing on Cabela's Wholesale's Claims. .................................................................................. 7

        2.   Cabela's Wholesale Adequately Alleged That It Justifiably Relied on Defendants' Misrepresentations. ............................................................. 10

        3.   The Letter of Intent Cannot Be Properly Considered on a Motion to Dismiss. ................................................................................................... 13

    B.   Cabela's Wholesale Has Sufficiently Stated a Claim for Tortious Interference with Prospective Economic Advantage. ............................................................. 15

        1.   Cabela's Wholesale Has Sufficiently Pled a Prospective Contractual Relation with Millcreek Marketplace. ..................................................... 15

        2.   Cabela's Wholesale Has Sufficiently Pled Defendants' Intent to Harm and Absence of Privilege or Justification ............................................... 17

        3.   Cabela's Wholesale Has Properly Identified Cafaro as the Interfering Party. ........................................................................................................ 18

V.   CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Avins v. Moll*, 610 F. Supp. 308 (E.D. Pa. 1984) ........................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 5, 6, 15

*Bennett v. Itochu*, 682 F. Supp. 2d 469 (E.D. Pa. 2010) ................................................ 8

*Blumsenstock v. Gibson*, 811 A.2d 1029 (Pa. Super. Ct. 2002) ............................. 10, 11

*Brandow Chrysler Jeep Co. v. Datascan Tech.*, 511 F. Supp. 2d 529 (E.D. Pa. 2007) ................ 6

*Den-Tal-Ez, Inc. v. Siemens Capital Corp.* 566 A.2d 1214 (Pa. Super. Ct. 1989) ......... 8, 9, 10, 12

*Dilworth v. Metro. Life Ins. Co.*, 418 F.3d 345 (3d Cir. 2005) ..................................... 10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................... 13

*Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261 (Pa. Super. Ct. 2012) .... 15, 16

*Killian v. McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994) ........................................... 19

*Luther v. Kia Motors Am., Inc.*, No. 2:08-cv-386, 2008 WL 2397331 (W.D. Pa. June 12, 2008) ................................................................................................. 13, 14, 15

*Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 352 (Pa. Super. Ct. 2012) ... 17

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) ....................................................................... 6

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644 (W.D. Pa. 1999) .... 13

*Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979) .................................. 15

*Tran v. Metro. Life Ins. Co.*, 408 F.3d 130 (3d Cir. 2005) ............................................ 10

*Wagner v. Tuscarora School District*, No. Civ.A. 1:04-CV-1133, 2006 WL 167731 (M.D. Pa. Jan. 20, 2006) ................................................................................................. 19

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94 (Pa. Super. Ct. 2009) ........... 17

*Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651 (3d Cir. 2003) ................................... 5

## Other Authorities

Restatement (Second) of Torts § 767 ................................................................. 17, 18

| | | |
|---|---|---|
| CABELA'S WHOLESALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-00118-SJM |
| | ) | |
| v. | ) | Electronically Filed |
| | ) | |
| MILLCREEK MARKETPLACE, LLC | ) | |
| and THE CAFARO COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF CABELA'S WHOLESALE, INC.'S BRIEF
IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Plaintiff Cabela's Wholesale, Inc. ("Cabela's Wholesale") respectfully submits this brief in opposition to defendants Millcreek Marketplace, LLC's ("Millcreek Marketplace's") and The Cafaro Company's ("Cafaro's") (collectively, "Defendants'") motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss").

## I.     INTRODUCTION

Cabela's Wholesale filed the present action in an effort to recoup the substantial investments it made in the development of a site at the Millcreek Marketplace Shopping Center (the "Marketplace Site") for a future Cabela's-brand retail location.  As alleged in the Complaint, Cabela's Wholesale made these investments in reasonable reliance on Defendants' repeated false assurances that there was not, nor would there ever be, any contractual impediments to finalizing a lease for the Marketplace Site.  (Compl., Dkt. #1, at ¶ 2).  Contrary to these assurances, however, Defendants never had any intention of ensuring that no contractual impediments would arise and stymie the negotiations between Cabela's Wholesale and Millcreek Marketplace.  (*Id.* at ¶ 3).  Instead, Defendants intended from the beginning to simply use Cabela's Wholesale to advance their own selfish agenda.  (*Id.* at ¶ 5).

In an effort to escape bearing any consequences for this wrongful conduct, Defendants have moved to dismiss Cabela's Wholesale's claims before Cabela's Wholesale even has the opportunity to take discovery. Defendants' motion, however, fails for the following two reasons.

***First,*** Defendants' theory that Cabela's Wholesale's misrepresentation and detrimental reliance claims in Counts II through IV are unsustainable based on the language of "No Option" clause in the letter of intent dated February 28, 2013 (the "Letter of Intent") is inapposite. Defendants argue that because the "No Option" clause "clearly and unambiguously acknowledges that neither it nor the parties' negotiations would be binding unless and until the parties executed a formal lease agreement and that … [Millcreek Marketplace] was free to lease or sell the premises to a third party," Cabela's Wholesale cannot base its misrepresentation claims on Millcreek Marketplace's alleged decision to lease the Marketplace Site to someone else. (Motion to Dismiss, Dkt. #8, at pp. 2-3). This is a classic "straw man" argument which has no bearing on the sustainability of the Complaint because Cabela's Wholesale has not set forth a claim for breach of the Letter or Intent. Instead, the basis for Cabela's Wholesale's misrepresentation claims is the allegation that, from the very beginning of their relationship, Defendants lied about their intention not to seek out insurmountable contractual roadblocks to Cabela's Wholesale entering into a lease for the Marketplace Site. The Letter of Intent is completely silent on this issue and, therefore, has no applicability to this case and did not provide Defendants with a license to mislead Cabela's Wholesale.

***Second***, Cabela's Wholesale has sufficiently stated a claim for tortious interference with prospective economic advantage. Cabela's Wholesale and Millcreek Marketplace were on the cusp of a final lease when Cafaro instructed Millcreek Marketplace to call off the negotiations in the eleventh hour. This act was the culmination of Cafaro's tortious scheme to manipulate

Cabela's Wholesale into continuing negotiations with Millcreek Marketplace just so Cafaro could leverage Cabela's Wholesale's interest in bad faith in order to negotiate better contractual terms with an unknown third party. Cafaro's brazen interference with the prospective lease between Cabela's Wholesale and Millcreek Marketplace was neither privileged nor justified, and Cafaro should be held accountable for its actions.

Accordingly, for these reasons and the reasons discussed more thoroughly below, Cabela's Wholesale has adequately alleged its claims in Counts I through IV of the Complaint and the Court should deny Defendants' motion to dismiss in its entirety.

## II.  FACTUAL BACKGROUND

In early 2011, Cabela's Wholesale began investigating potential sites for opening a Cabela's retail outlet in Erie, Pennsylvania. (Compl., Dkt. #1, at ¶ 13). In order to help identify a viable site, Cabela's Wholesale engaged its real estate broker, Kevin Langholz, to act as its duly authorized agent. (*Id.* at ¶ 14). After conducting a thorough search of the target area, Mr. Langholz identified three sites owned by Defendants that could potentially meet Cabela's Wholesale's needs. (*Id.* at ¶ 15). One of those sites was the Marketplace Site, which is located in the Millcreek Marketplace Shopping Center. (*Id.* at ¶ 1). The Millcreek Marketplace Shopping Center is owned by Millcreek Marketplace. (*Id.* at ¶ 9). Millcreek Marketplace only has two shareholders: Cafaro and Baldwin Brothers, Inc. (*Id.*).

The Marketplace Site was quickly recognized as the best option, and Cabela's Wholesale elected to focus all of its efforts on negotiating a lease for that site. (*Id.* at ¶¶ 29-30). However, before Cabela's Wholesale began negotiating with Millcreek Marketplace in earnest, it sought assurances from Defendants that "there was not, nor would there ever be, any contractual impediments to finalizing a lease for the Marketplace Site." (*Id.* at ¶¶ 24-28). Specifically,

Cabela's Wholesale asked whether restrictive use covenants in Cafaro's other leases would preclude Cabela's Wholesale from entering into either space. (*Id.*). Cabela's Wholesale sought these assurances because it was worried that the presence of two of its competitors in nearby developments owned by Cafaro might pose significant problems to finalizing a lease for the Marketplace Site. (*Id*. at ¶¶23-24). Representatives from both Cafaro and Millcreek Marketplace explicitly confirmed that there would not be any contractual impediments to moving forward with and eventually finalizing a lease for the Marketplace Site. (*Id.* at ¶¶ 25, 28).

Unbeknownst to Cabela's Wholesale, however, Defendants never had any intention of ensuring that there were no contractual obstacles to the parties negotiating a lease for the Marketplace Site in good faith. (*Id.* at ¶ 61). Instead, the representation was designed to lure Cabela's Wholesale to the negotiating table so that Defendants could try to leverage Cabela's Wholesale's interest in the Marketplace Site into better contractual terms with third parties interested in excluding Cabela's from the Erie market. (*Id.* at ¶ 5). Tricked by Defendants, Cabela's Wholesale began negotiating a lease for the Marketplace Site in June 2012 under the faulty assumption that the parties were dealing in good faith. (*Id* at ¶ 31).

At the same time, Cabela's Wholesale began to undertake significant development activities, including, but not limited to, having its architects draw up a site plan and performing a thorough economic analysis of the future store. (*Id.* at ¶¶ 33-35). Cabela's Wholesale also identified and devised a solution for a potential storm water permitting issue at the Marketplace Site. (*Id.* at ¶ 36). This activity directly benefitted Millcreek Marketplace. (*Id.* at ¶ 39).

On February 28, 2013, the parties entered into the Letter of Intent, which set forth the general terms and conditions under which Millcreek Marketplace would lease the Marketplace Site to Cabela's Wholesale. (*Id.* at ¶ 42). Immediately thereafter, the parties began exchanging

drafts of a proposed Land Lease. (*Id.* at ¶ 43-45). On March 27, 2013, Cabela's Wholesale sent an email to Millcreek Marketplace seeking to arrange a call to hash out the few remaining legal issues Cabela's Wholesale had with the draft lease. (*Id.* at ¶ 45).

Before that call could ever take place, however, Greg Baldwin, on behalf Millcreek Marketplace called Cabela's Wholesale to inform the company that the deal was off. (*Id.* at ¶ 47). Apparently, Cafaro had entered into a contract with an unknown third party that, by its terms, prohibited Millcreek Marketplace from leasing the Marketplace Site to Cabela's Wholesale. (*Id.* at ¶ 47).

At the time Millcreek Marketplace broke off the lease negotiations at Cafaro's behest, Cabela's Wholesale had already invested nearly $400,000 in developing the Marketplace Site in direct reliance on Defendants' misrepresentations that Cabela's Wholesale could proceed with the negotiation because there was not, nor would there ever be, any contractual impediments to a finalized lease. (*Id.* at ¶ 1, 51).

### III.  LEGAL STANDARD

In considering whether a complaint survives a Rule 12(b)(6) motion to dismiss, the court must review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (emphasis in original). In making this determination, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir. 2003).

A complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations." *Brandow Chrysler Jeep Co. v. Datascan Tech.*, 511 F. Supp. 2d 529, 534 (E.D. Pa.

2007) (quoting *Twombly*, 550 U.S. at 555). Rather, the allegations need only "be enough to raise

a right to relief above the speculative level … on the assumption that all of the complaint's

allegations are true (even if doubtful in fact)." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

citations omitted)). The complaint will be deemed to have alleged sufficient facts "if it

adequately put [the] defendant on notice of the essential elements of the plaintiff's cause of

action." *Id.* (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). Importantly, when

considering a Rule 12(b)(6) motion to dismiss, the court may not "inquire whether the plaintiffs

will ultimately prevail, only whether they are entitled to offer evidence to support their claims."

*Id.* (citing *Nami*, 82 F.3d at 65).

Applying this standard, Cabela's Wholesale's Complaint has undoubtedly alleged

sufficient facts to warrant the denial of Defendants' motion.

## IV. <u>ARGUMENT</u>

**A.** **The "No Option" Clause in the Letter of Intent Does Not Preclude Cabela's Wholesale's Misrepresentation and Detrimental Reliance Claims in Counts II through IV of the Complaint.**

Defendants' arguments that Cabela's Wholesale failed to adequately state its

misrepresentation and detrimental reliance claims in the Complaint are premised on the mistaken

contention that Cabela's Wholesale "bases its claims upon the decision by [Millcreek

Marketplace] to lease the Marketplace Site to 'an unknown third party.'" (Motion to Dismiss,

Dkt. #8, at p. 2).[1] From this flawed premise, Defendants argue that "[b]ecause the Letter of

---

[1]     In the Motion to Dismiss, Defendants attack Cabela's Wholesale's fraudulent misrepresentation, negligent misrepresentation and detrimental reliance claims on the same grounds. (*See* Motion to Dismiss, Dkt. #8, at p.11 ("Cabela's negligent misrepresentation claim fails for the same reasons as its fraud claim.") and p. 16 ("Cabela's promissory estoppel/detrimental reliance claim fails based upon many of the same defects that doom its fraud, misrepresentation and tortious interference claims.")). As a result, Cabela's Wholesale's arguments in Section IV(A) apply with equal force to all three of these claims.

Intent clearly and unambiguously acknowledged that neither it nor the parties' negotiations would be binding unless and until the parties executed a formal lease agreement," a decision to lease the Marketplace Site to a third party cannot support liability on the part of Defendants. (*Id.* at pp. 2-3). Contrary to Defendants' characterization, however, Cabela's Wholesale's claims are ***not*** based on Millcreek Marketplace's alleged decision to lease the Marketplace Site to an unknown third party. Instead, Cabela's Wholesale's claims are based on the well-pled allegation that, from the very beginning, Defendants lied about their intention to avoid creating insurmountable contractual barriers to negotiating a lease in good faith with Cabela's Wholesale. As a result, the terms of the Letter of Intent are irrelevant to Cabela's Wholesale's claims and Defendants have failed to set forth a single credible argument as to why Counts II through IV of the Complaint should not survive.

  1. **The Terms of the Letter of Intent Have No Bearing on Cabela's Wholesale's Claims.**

  To be clear, Cabela's Wholesale is not claiming that Defendants guaranteed that Millcreek Marketplace would lease the Marketplace Site to Cabela's Wholesale, or that Defendants told Cabela's Wholesale that Millcreek Marketplace would not negotiate with other prospective tenants, in direct conflict with the terms of the Letter of Intent. Rather, as is set forth in the Complaint, the basis for Cabela's Wholesale's claims in Counts II through IV is the allegation that Defendants' falsely assured Cabela's Wholesale "that there was not, nor would there ever be, any contractual impediments to finalizing a lease for the Marketplace Site." (*See* Compl., Dkt. 1, at ¶¶ 2, 25, 28). In other words, Cabela's Wholesale is alleging that Defendants made two very specific misrepresentations: (1) that there were no contractual impediments, including, but not limited to, restrictive covenants in any of their then-existing leases, and (2) that Defendants did not have the present intention to create any contractual impediments while

they were negotiating with Cabela's Wholesale.[2]  (*Id.*).  Importantly, neither of these misrepresentations has anything to do with the Letter of Intent, which Defendants concede only "acknowledges that neither it nor the parties' negotiations would be binding unless and until the parties executed a formal lease agreement and that [Millcreek Marketplace] was not granting an option on, or reservation of, the Marketplace Site to [Cabela's Wholesale]."  (Motion to Dismiss, Dkt. #8, at p. 2).  Because the Letter of Intent has no bearing on the misrepresentations that form the basis for Cabela's Wholesale's claims, it cannot serve as an absolute bar to these claims.

At least one Pennsylvania court has found that a letter of intent containing similar language to the one at issue here does not preclude a plaintiff from bringing misrepresentation claims not covered by the terms of the agreement. *See Den-Tal-Ez, Inc. v. Siemens Capital Corp.* 566 A.2d 1214, 1225 (Pa. Super. Ct. 1989).

In *Den-Tal-Ez*, defendants sought to enter the dental apparatus business and contacted two companies about a potential acquisition.  *Id.* at 1218.  Before plaintiffs would agree to proceed with the negotiations, however, it sought assurances from defendants that they were no longer interested in acquiring plaintiffs' competitor.  *Id.*  Defendants represented that the other potential deal with plaintiffs' competitor was "dead" and that they were only interested in negotiating with plaintiffs.  *Id.* at 1219.  In reliance on these representations, plaintiffs commenced negotiations with defendants.  *Id.*  In the process of negotiating the deal, defendants asked to do a financial and operations "due diligence" review.  *Id.*   Plaintiffs agreed, but

---

[2]      Although this portion of Cabela's Wholesale's misrepresentation claims is based on a promise not to do something in the future, and these  types of promises generally do not constitute a fact which is sufficient to base a claim of fraudulent misrepresentation upon, Cabela's Wholesale has alleged that Defendants made the statement knowing they would never follow through with their promise.  Thus, "[s]ince Plaintiffs have alleged that Defendants' statements were false at the time they were made, those statements regarding future events are sufficient for a claim of fraudulent misrepresentation."  *Bennett v. Itochu*, 682 F. Supp. 2d 469, 480 (E.D. Pa. 2010).

required defendants to first execute a letter of intent, regarding the acquisition, and a confidentiality agreement, obligating defendants not to use or disclose any confidential information they obtained regarding plaintiffs' business during the review. *Id.* The letter of intent did not contain a "no-shop" clause preventing defendants from negotiating with other companies with an eye to acquiring them. *Id.*

After the due diligence review was completed, and defendants learned every intimate detail of plaintiffs' business, defendants called off the negotiations with plaintiffs and resumed negotiations with plaintiffs' competitor. *Id.* Plaintiffs sought a permanent injunction to stop defendants' acquisition of plaintiffs' competitor, which the trial court granted. *Id.* at 1220. Defendants appealed. *Id.*

On appeal, plaintiffs argued, in part, that the injunction should be upheld as a result of defendants' fraudulent conduct. *Id.* at 1222. In response, defendants argued that the letter of intent precluded plaintiffs' recovery under any tort theory, including fraudulent misrepresentation, because the letter of intent could "only be construed to have obligated the parties to negotiate, but was terminable at will and gave rise to no obligation to continue to negotiate, to negotiate only with [plaintiffs], or to close the deal." *Id.* The Pennsylvania Superior Court rejected defendants' argument and affirmed the trial court's decision. The court explained that:

> The fact that the Letter of Intent does not expressly prohibit [defendants] from negotiating with others while negotiating with [plaintiffs] does not in any way erode [plaintiffs'] actual theory of relief here. [Plaintiffs] contend[] that [they] had an understanding with [defendants] that [defendants] would not pursue a deal [with plaintiffs' competitor] while pursuing the acquisition of [plaintiffs' business], or, alternatively, that [defendants] made such a representation to [plaintiffs], on which [plaintiffs] relied to [their] detriment. ***Surely [plaintiffs] are not barred from submitting evidence on this question or from pressing this claim merely by the existence of the Letter.***

*Id.* at 1225 (emphasis added).

Just like the plaintiffs in *Den-Tal-Ez*, Cabela's Wholesale should not be precluded from pressing its misrepresentation claims in this case simply because of the existence of the Letter of Intent.

### 2. Cabela's Wholesale Adequately Alleged That It Justifiably Relied on Defendants' Misrepresentations.

Even though it is not appropriate at this stage of the proceedings, Defendants argue that Cabela's Wholesale's "lack of justifiable reliance provides a further basis for dismissal of [its] fraud claim." (Motion to Dismiss, Dkt. #8, at p. 10). Indeed, the Third Circuit has repeatedly stressed, "'as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury.'" *Dilworth v. Metro. Life Ins. Co.*, 418 F.3d 345, 354 (3d Cir. 2005) (quoting *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 139 (3d Cir. 2005)). In this case, Defendants have attempted not only to deprive Cabela's Wholesale's right to present this issue to a jury, but to deprive it of an opportunity to even conduct *discovery*. Defendants' sole justification for their request is that the Letter of Intent supposedly "specifically disclaims" their representations that "there was not, nor would there ever be, any contractual impediments to a final lease" and, thus, Cabela's Wholesale could not justifiably rely on these statements. (Motion to Dismiss, Dkt. #8, at p. 10). Putting aside the fact that the issue of justifiable reliance is not appropriate for determination on a motion to dismiss, Defendants' position is unavailing for three reasons.

***First***, Defendants' reliance on the holding in *Blumsenstock v. Gibson*, 811 A.2d 1029 (Pa. Super. Ct. 2002) is misplaced. As the sole support for their argument that Cabela's Wholesale lacks justifiable reliance as a matter of law, Defendants' cherry-pick a single passage from the court's opinion in *Blumenstock* and claim that it stands for the general proposition that "a party

cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." (Motion to Dismiss, Dkt. #8, at p. 10). Defendants' selective quotation, however, misrepresents the true nature of the holding in that case. In *Blumenstock*, the court held that if a party claims fraud in the inducement to a fully integrated contract, the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement. *Id.* at 1035-36. Therefore, the party claiming fraud in the inducement cannot establish that he or she justifiably relied on the alleged misrepresentations. *Id.* at 1038. This rule has no applicability to the present case because Cabela's Wholesale is not claiming that it was fraudulently induced into entering the Letter of Intent. Nor is Cabela's Wholesale attempting to vary any of the terms of that agreement. As a result, Cabela's Wholesale's misrepresentation claims are in no way based on the Letter of Intent and the *Blumenstock* court's interpretation of the parol evidence rule does not apply to this action.

***Second***, even if *Blumenstock* were relevant, the holding in that case would not apply here because: (1) the Letter of Intent is not a fully integrated agreement and (2) it does ***not*** specifically disclaim Defendants' earlier misrepresentations that there was not, nor would there ever be, contractual road blocks to negotiating a lease in good faith. The "No Option" clause upon which Defendants rely simply states that:

> Until and unless a Lease for the Demised Premises is executed between Landlord and Tenant, neither this proposal nor any other negotiations between the parties shall be deemed binding, and this proposal shall not be deemed to create an option of, or reservations of, the Demised Premises to Tenant.

(Letter of Intent, Ex. A to Motion to Dismiss, Dkt. #8, at "No Option" Clause). Notably, this clause does ***not*** state that the Letter of Intent is a complete expression of the parties' agreement. The clause is also completely silent on the subject of contractual impediments to Cabela's Wholesale leasing the Marketplace Site. Indeed, there is no mention whatsoever of whether any

of Defendants' then-existing leases contained restrictive covenants that would preclude Cabela's Wholesale from entering the Marketplace Site. There is also nothing in the "No Option" clause about Defendants' intention to avoid ***creating*** contractual impediments to a lease with Cabela's Wholesale. Instead, the Letter of Intent is nothing more than a plain statement of the parties' intention to negotiate a potential lease along certain parameters. Therefore, the fact that the Letter of Intent does not expressly require Millcreek Marketplace to "withdraw the Marketplace Site from the commercial real estate market, refrain from marketing the site to others, or discontinue negotiations with any other prospective tenant" (Motion to Dismiss, Dkt. #8, at p. 2) does not in any way defeat Cabela's Wholesale's actual theory of relief in this case. *See Den-Tal-Ex, Inc.*, 566 A.2d at 1225 (holding that the "Letter [of Intent] purports to be nothing more than what it is—a statement of the parties' present intent to go forward with a planned acquisition of [plaintiffs' business] by [defendants] and an outline of the basic terms of that acquisition. ***We do not regard the Letter as an exclusive statement of the parties' understanding.***") (emphasis added). Accordingly, Cabela's Wholesale has adequately alleged that it justifiably relied on Defendants' misrepresentations and should be permitted to take discovery to fully flesh out its claims.

**Third**, even assuming *arguendo* that the "No Option" clause could be construed as an integration clause barring justifiable reliance on the part of Cabela's Wholesale, which it cannot, Cafaro cannot invoke the integration clause as a defense because it is not a party to the Letter of Intent. The Letter of Intent clearly states that it is "a lease proposal outlining the terms and conditions under which Landlord would lease [the Marketplace Site] to Cabela's Wholesale, Inc." (Letter of Intent, Ex. A to Motion to Dismiss, Dkt. #8, at p. 1). The Letter of Intent defines Millcreek Marketplace as the sole "Landlord." Moreover, the Letter of Intent is only signed on

behalf of Millcreek Marketplace. (*Id.*). Therefore, Cafaro may not rely on the "No Option" clause in the Letter of Intent to defeat Cabela's Wholesale's misrepresentation claims. *See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999) (holding that "the integration clause bars whatever fraud in the inducement claims Sunquest may have otherwise had against Compucare. It does not, however bar those claims against Dean Witter, which was not a party to the SPA [the agreement containing the integration clause].").

### 3. The Letter of Intent Cannot Be Properly Considered on a Motion to Dismiss.

Finally, Cabela's Wholesale disputes Defendants' claim that the Court can properly consider the Letter of Intent at this stage of the proceedings.

A district court may consider a document attached to a motion to dismiss provided that "the document is integral to or expressly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Thus, the test for considering extrinsic documents has two parts: "the complaint must not only refer to the document in question, but it must also be central to the claims therein." *Luther v. Kia Motors Am., Inc.*, No. 2:08-cv-386, 2008 WL 2397331, at *6 (W.D. Pa. June 12, 2008). The Letter of Intent fails this test.

As discussed more thoroughly above, the Letter of Intent is not "integral" to any of Cabela's Wholesale's claims. Cabela's Wholesale does not allege that Millcreek Marketplace breached the Letter of Intent. Nor does Cabela's Wholesale allege that, contrary to the terms of the Letter of Intent, Millcreek Marketplace was in any way obligated to lease the Marketplace Site to Cabela's Wholesale. Rather, Cabela's Wholesale only alleges that Defendants' misrepresented that the lease negotiations could proceed in good faith due to an absence of contractual impediments. As a result of Defendants' misrepresentations, Cabela's Wholesale further alleges that it made certain investments to its detriment. Because the Letter of Intent is

not an essential part of any of Cabela's Wholesale's claims, the Court should not consider it in deciding Defendants' Motion to Dismiss.  *See id.* at *5.

This Court reached the same conclusion under similar facts in *Luther*.  In that case, plaintiffs were contacted by representatives of defendant to discuss the possibility of purchasing a Kia vehicle franchise.  *Id.* at *1.  During these negotiations, defendant's representatives required plaintiffs to provide certain confidential information.  *Id.*  After receiving this information, defendant informed plaintiffs that they had been selected for a franchise and that it was just a matter of completing a franchise application to finalize the transaction, which plaintiffs completed.  *Id.*  While waiting for final approval of their application, defendant's agents convinced plaintiffs to create a separate legal entity for the new franchise and pay to obtain the necessary signage.  *Id.*  Despite these efforts, however, defendant's agents ultimately refused to submit plaintiffs' franchise application to the national office.  *Id.*  In response, plaintiffs filed a complaint alleging, in part, that defendant's agents "falsely misrepresented to Plaintiffs that their application would be submitted to the national office for approval and Plaintiffs justifiably relied on those representations to their detriment."  *Id.*

Defendant filed a motion to dismiss in response. Defendant's sole argument in the motion was that a written agreement signed by plaintiffs precluded any misrepresentation claim because it explicitly stated that the transaction would not be consummated until a "Franchise Agreement" was signed by an executive of the national office.  *Id.* at *3.  Consequently, defendant argued that plaintiffs could not justifiably rely on any of the alleged misrepresentations made by defendant's agents.  *Id.*  Plaintiffs responded by stating that the Franchise Agreement could not be considered on the motion to dismiss because it was not central or essential to plaintiffs' misrepresentation claims.  This Court agreed with plaintiffs and refused to consider the Franchise

Agreement. The Court explained that since plaintiffs did not allege that defendant "breached the Franchise Agreement," the Franchise Agreement may have been essential to defendant's defense but it was "not essential to the allegations in [plaintiffs'] Complaint." *Id.* at *5.

Similarly, the Letter of Intent is not "integral" or "essential" to any of Cabela's Wholesale's claims and, therefore, it should not be considered by the court in reaching its decision on Defendants' motion.

**B.      Cabela's Wholesale Has Sufficiently Stated a Claim for Tortious Interference with Prospective Economic Advantage.**

It is undisputed that to state a claim for tortious interference with prospective economic advantage, a plaintiff must show "1) a prospective contractual relation; 2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) the occasioning of actual damage resulting from the defendant's conduct." *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 (Pa. Super. Ct. 2012) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)); (*see also* Motion to Dismiss, Dkt. #8, at p. 12). However, Defendants' assertions that Cabela's Wholesale cannot allege the first three elements and that other legal barriers inhibit Cabela's Wholesale's ability to state a claim are without merit. (*See* Motion to Dismiss, Dkt. #8, at p. 14). To the contrary, Cabela's Wholesale has alleged sufficient facts to "raise a right to relief above the speculative level" for its tortious interference with prospective economic advantage claim. *Twombly*, 550 U.S. at 555.

**1.      Cabela's Wholesale Has Sufficiently Pled a Prospective Contractual Relation with Millcreek Marketplace.**

To prove the existence of a prospective contractual relation, a plaintiff must show "a reasonable likelihood or probability that the anticipated business relationship will be

consummated." *Int'l Diamond*, 40 A.3d at 1275; (*see also* Motion to Dismiss, Dkt. #8, p. 12).

Of course, "the plaintiff need not demonstrate a guaranteed relationship because anything that is

prospective in nature is necessarily uncertain." *Int'l Diamond*, 40 A.3d at 1275 n. 14. There

must simply exist "more than a mere hope or . . . innate optimism." *Id.*

      Defendants argue that in light of the Letter of Intent's "No Option" clause, Cabela's

Wholesale "cannot allege that it had a reasonable expectation of a future contractual relationship

with Millcreek Marketplace." (Motion to Dismiss, Dkt. #8, at p. 13). Clearly though, an

agreement that neither Cabela's Wholesale nor Millcreek Marketplace "would be bound unless

and until they signed a mutually acceptable written lease" does not necessarily preclude a finding

that there was a ***reasonable likelihood*** that they would become so bound in the near future. (*See

id.*). Thus, the "No Option" clause, at best, proves only that there was no ***guaranteed***

relationship between Cabela's Wholesale and Millcreek Marketplace[3] and, therefore, does not

prevent a finding that, in light of the extensive negotiations undertaken by the parties, a

*prospective* contractual relation existed.

      For nearly one year, Cabela's Wholesale and Millcreek Marketplace negotiated a Letter

of Intent containing six pages of specific "terms and conditions under which [Millcreek

Marketplace] would lease a pad to Cabela's." (Letter of Intent, Exh. A to Motion to Dismiss,

Dkt. #8, at p. 1); (Compl., Dkt. #1, at ¶¶ 31-45). As a result of negotiations ***above and beyond***

those culminating in the Letter of Intent, a proposed lease was drafted in early March 2013. (*See

Compl.*, Dkt. #1, at ¶ 43-45). It was only after numerous revisions to that draft that Millcreek

Marketplace ceased negotiations as a result of Cafaro's interference. (*See id.* at ¶ 46). Certainly,

---

[3]     Cabela's Wholesale does not dispute this, as evidenced by its decision not to state a claim
for tortious interference *with contract* against Cafaro or breach of the Letter of Intent against
Millcreek Marketplace.

between June 2012 and March 2013, the relationship between Cabela's Wholesale and Millcreek Marketplace had risen to more than a mere hope of Cabela's Wholesale leasing the Marketplace Site from Millcreek Marketplace. In fact, short of a guaranteed relationship, it is difficult to imagine a contractual relationship closer to consummation than that between Cabela's Wholesale and Millcreek Marketplace.

### 2. Cabela's Wholesale Has Sufficiently Pled Defendants' Intent to Harm and Absence of Privilege or Justification.

A plaintiff must show that "the defendant's actions were *improper* under the circumstances presented." *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009) (original emphasis). To determine whether a particular course of conduct is improper, consideration should be given to:

> 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the other with which the actor's conduct interferes; 4) the interests sought to be advanced by the actor; 5) the proximity or remoteness of the actor's conduct to the interference; and 6) the relationship between the parties.

*Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 352, 355 (Pa. Super. Ct. 2012) (citing Restatement (Second) of Torts § 767). The determination of whether conduct is improper "depends upon a judgment and choice of values in each situation." *Walnut St.*, 982 A.2d at 98 (quoting § 767 cmt. b). "Recognized standards of business ethics . . . are pertinent, and consideration is given to [the] concept[] of fair play[.]" Restatement (Second) of Torts § 767 cmt. j.

Defendants contend that Cafaro's "act of introducing another prospective tenant to the Marketplace Site and that prospective tenant's execution of a lease of the premises are actions expressly permitted by the Letter of Intent." (Motion to Dismiss, Dkt. #8, at p. 15). However, "[t]he issue is not simply whether [Cafaro] is justified in causing the harm, but rather whether [it]

is justified in causing [the harm] ***in the manner in which*** [it] cause[d] it." Restatement (Second) of Torts § 767 cmt. c (emphasis added).

As detailed above, Cafaro's manipulation of Cabela's Wholesale into continuing negotiations with Millcreek Marketplace for the sole purpose of exploiting Cabela's Wholesale's interest so that Cafaro could conclude a lease with a third-party competitor offends business ethics and the notion of fair play. Accordingly, just as Cabela's Wholesale alleged in the Complaint, Cafaro's conduct was neither privileged nor justified under the circumstances. (*Id.*)

### 3. Cabela's Wholesale Has Properly Identified Cafaro as the Interfering Party.

Cabela's Wholesale does not dispute that "in order to plead an intentional interference claim, [it] must identify three parties—two contracting parties and an interfering party." (Motion to Dismiss, Dkt. #8, p. 14) (citation omitted). Nor does Cabela's dispute that "[b]ecause a corporation or other business entity acts through its agents and officers, such agents and officers are not liable for interference with a corporate contract when acting in their official capacities." (*Id.*) (citations omitted). However, that rule has no relevance in the present action.

Cabela's Wholesale has not alleged tortious interference by an agent or officer of Millcreek Marketplace. Rather, Cabela's Wholesale has alleged tortious interference by Cafaro, the corporate entity, with a prospective contractual relationship between Cabela's Wholesale and Millcreek Marketplace, a separate corporate entity. The cases cited by Defendants simply do not support their argument that Cafaro, as a partial shareholder of Millcreek Marketplace, cannot be liable for the alleged interference.

In the first case cited by Defendants, the court found that there was no third-party interference with a collective bargaining agreement to which the school district was a party, where the allegedly interfering defendants were either subject to the agreement or were school

district employees or agents. *Wagner v. Tuscarora School District*, No. Civ.A. 1:04-CV-1133, 2006 WL 167731, at *13 (M.D. Pa. Jan. 20, 2006). Here, Cafaro would not have been a party to the prospective lease between Cabela's Wholesale and Millcreek Marketplace, nor is it an employee or agent that can act on behalf of Millcreek Marketplace.[4]

*Killian v. McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994), is even less persuasive, as the court there did not address the issue presently before this Court. In *Killian*, the court found that where the plaintiff pled facts sufficient to pierce the corporate veil for a breach of contract claim against the defendant corporate officers, the defendants were no longer protected by the corporate form and, therefore, could be considered third parties for purposes of a tortious interference claim. *Id*. at 1251.

In the final case cited by Defendants in support of their argument, the court found that an employer's agents, including both trustees and employees, could not be held liable for inducing the termination by the employer of the employee plaintiff. *Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa. 1984). Again, Cafaro is not a trustee or employee of Millcreek Marketplace.

In sum, because Cafaro would not have been a party to the prospective lease between Cabela's Wholesale and Millcreek Marketplace and is not a director, officer or agent with authority to act on behalf of Millcreek Marketplace, it is not insulated from liability for tortious interference. In light of this and all of the above, Cabela's has sufficiently stated a claim for tortious interference with prospective economic advantage.

## V.     CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.

---

[4]   Any argument that Cafaro had authority to act on behalf of Millcreek Marketplace raises an issue of material fact that necessitates discovery.

Dated:  June 24, 2013                    Respectfully Submitted:

/s/ James P. Angelo
Thomas E. Birsic (Pa. ID 31092)
James P. Angelo (Pa. ID 306430)
Sarah A. Bronder (Pa. ID 314495)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Telephone:  (412) 355-6500
Facsimile:  (412) 355-6501

*Counsel for Cabela's Wholesale, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2013, a true and correct copy of the foregoing "Plaintiff

Cabela's Wholesale, Inc.'s Brief in Opposition to Defendants' Motion to Dismiss Complaint

Pursuant to Fed. R. Civ. P. 12(B)(6)" has been made available for downloading from the Court's

electronic filing system and is being served via email upon the following counsel of record:

> Richard A. Lanzillo, Esq.
> 120 West Tenth Street
> Erie, PA 16501-1461
> Telephone: (814) 459-2800
> Fax: (814) 453-4530
> Email: rlanzillo@kmgslaw.com
>
> *Counsel for Defendants*


> /s/ James P. Angelo_____
> James P. Angelo