IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CABELA'S WHOLESALE, INC.,<br><br>　　　　Plaintiff<br><br>v.<br><br>MILLCREEK MARKETPLACE, LLC and<br>THE CAFARO COMPANY,<br><br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 1:13-CV-00118-SJM<br><br>(Assigned to Chief Judge Sean J. McLaughlin)<br><br>ELECTRONICALLY FILED PLEADING<br><br>**REPLY BRIEF IN SUPPORT OF MOTION<br>TO DISMISS PURSUANT TO<br>FED. R. CIV. P. 12(b)(6)**<br><br><br>Filed on behalf of: Defendants,<br>Millcreek Marketplace, LLC and<br>The Cafaro Company<br><br>Counsel of Record for these Defendants:<br><br>Richard A. Lanzillo, Esq.<br>PA ID No.  53811<br>Knox McLaughlin Gornall & Sennett, P.C.<br>120 West Tenth Street<br>Erie, PA 16501<br>Telephone (814) 459-2800<br>Facsimile (814) 453-4530<br>Email rlanzillo@kmgslaw.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CABELA'S WHOLESALE, INC., | ) | Docket No. 1:13-CV-00118-SJM |
| | ) | |
| Plaintiff | ) | (Assigned to Chief Judge Sean J. McLaughlin) |
| | ) | |
| v. | ) | |
| | ) | |
| MILLCREEK MARKETPLACE, LLC and | ) | |
| THE CAFARO COMPANY, | ) | |
| | ) | |
| Defendants | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## I.     INTRODUCTION

Three matters raised in Cabela's Wholesale's Brief in Opposition to Defendants' Motion to Dismiss warrant a reply.

First, and most fundamentally, Cabela's Wholesale's brief posits an argument that is both circular and internally inconsistent.  Cabela's Wholesale emphasizes that it "is not claiming that Defendants guaranteed that Millcreek Marketplace would lease the Marketplace Site to Cabela's Wholesale, or that Defendants told Cabela's Wholesale that Millcreek Marketplace would not negotiate with other prospective tenants…".  (Brief in Opp., p. 7).  Nevertheless, Cabela's Wholesale identifies "the basis for [its] claims in Counts II through IV [fraudulent misrepresentation, negligent misrepresentation, and detrimental reliance] [as] the allegation that Defendants' (sic) *falsely assured Cabela's Wholesale 'that there was not, nor would there ever be, any contractual impediments to finalizing a lease for the Marketplace Site*."  (*Id.* (emphasis

supplied)).  Cabela's Wholesale acknowledges, however, that the "contractual impediment" it is complaining about in this case is the lease of the Marketplace Site to another prospective tenant. Cabela's Wholesale cannot, in one breath, acknowledge Defendants' right to lease the premises to another tenant and then, in the next breath, complain that Defendants exercised that right. Cabela's Wholesale's position is legally unsustainable based upon its own pleading admissions and the "no option" and "no reservation" provisions of the Letter of Intent.

Second, Cabela's Wholesale argues that Defendants never intended to avoid contractual impediments to its potential lease of the Marketplace Site and that this should spare its fraud, misrepresentation and detrimental reliance claims from dismissal.  However, this argument is both irrelevant and contradicted by Cabela's Wholesale's own Complaint.  The Complaint alleges negotiations spanning almost a full year that included the parties' execution of a non-binding Letter of Intent that expressly reserved Defendants' right to lease the Marketplace Site to another prospective tenant.  Cabela's Wholesale's argument ignores that the only representation of fact alleged in the Complaint to have been made by the Defendants was that no restrictive covenants precluded a potential lease of the Marketplace Site to Cabela's Wholesale.  Cabela's Wholesale does not, and cannot, allege that this representation was false.  The additional allegation that Defendants misled Cabela's Wholesale "about their ***intention to avoid creating insurmountable contractual barriers***" is factually vacant and wholly insufficient to support a fraud, misrepresentation or any other reliance-based cause of action.  More importantly, this vague assertion cannot override or evade the clear and unambiguous "no option" and "no reservation" terms of the Letter of Intent or Cabela's Wholesale's admission that Defendants had the right to lease the Marketplace Site to another prospective tenant.

Finally, having admitted that Millcreek Marketplace had the right to lease the Marketplace Site to another prospective tenant, Cabela's Wholesale cannot properly claim that The Cafaro Company, which Cabela's Wholesale identifies as one of the owners of Millcreek Marketplace, tortiously interfered with Cabela's Wholesale's prospective economic advantage when it exercised that very right.

## II.  ARGUMENT

### A.  Cabela's Wholesale's Complaint and Brief confirm its inability to establish the "falsity" and "justifiable reliance" elements of its claims.

The only representation Cabela's Wholesale alleges Millcreek Marketplace made to it was that "there would be no restrictive covenants that would prevent Cabela's from moving forward with and eventually finalizing a lease for the Marketplace Site."  (Complaint ¶¶27-28)  (*See also* Complaint ¶60: "Specifically, Defendants misrepresented that there would be no restrictive covenants relating to competitors that would preclude Cabela's Wholesale from leasing the Marketplace Site."). However, the Complaint does not allege the existence of any restrictive covenant that would have barred a lease of the Marketplace Site to Cabela's Wholesale and, therefore, does not allege the falsity of this representation. [1]  Instead, Cabela's Wholesale conflates the subsequent lease of the Marketplace Site to another prospective tenant with a restrictive covenant in an effort to convert an accurate statement of fact into a prospective obligation not to lease the Marketplace Site to any potential tenant other than Cabela's Wholesale.  This argument must fail as it is directly at odds with the pleading admissions of Cabela's Wholesale and the Letter of Intent.

---

[1]     Exhibit B to the Letter of Intent between Millcreek Marketplace and Cabela's Wholesale specifically identified the restrictive covenants that applied to the Marketplace Site.  (Motion to Dismiss, Exhibit A, ECF Document 7-1, pages 10-11 of 12).  Cabela's Wholesale does not allege, nor could it allege, that any of these restrictions would have barred it from leasing the Marketplace Site.

Cabela's Wholesale acknowledges that Millcreek Marketplace did not represent or agree not to negotiate with other prospective tenants of the Marketplace Site or ultimately lease the Marketplace Site to another prospective tenant. (Brief in Opp., pp. 6-7). The "no option" and "no reservation" terms of the Letter of Intent preclude a contrary position. Cabela's Wholesale's apparent argument that it somehow understood the alleged representations regarding the absence of restrictive covenants to imply an obligation not to lease the premises to another entity defies the unambiguous language of the Letter of Intent and is facially unreasonable. Cabela's Wholesale could not have entered into the Letter of Intent, with its "no option" and "no reservation" terms, and reasonably believed Millcreek Marketplace had represented or agreed to avoid "contractual impediments" in the form of a subsequent lease of the Marketplace Site to another prospective tenant. As Judge D. Brooks Smith, formerly of this Court and now of the Third Circuit, explained in the context of a common law fraud and securities fraud action:

> An important factor in determining whether plaintiffs' reliance was reasonable … *is the generality or specificity of the alleged misrepresentation*. Failure to read available documents issued by the defendant that contradict the alleged misrepresentation negates plaintiffs' reliance. Moreover, *the allegedly false or misleading statement must be clear*. Cf. *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 275 (6th Cir. 1991) (in analogous situation of promissory estoppel, promise relied upon must be "definite and clear"); *Clauson v. Smith*, 823 F.2d 660, 663 (1st Cir. 1987) (similar).

*Warden v. Crown Am. Realty Trust*, 1999 U.S. Dist. LEXIS 10262, 10-11 (W.D. Pa. June 6, 1999)(additional internal citations omitted, emphasis supplied).

Here, the Complaint alleges representations regarding the absence of restrictive covenants that would bar a lease to Cabela's Wholesale, but does not allege the falsity of these representations. The only other "representations" that Cabela's Wholesale alludes to in the Complaint are vague references to avoiding contractual "impediments" and "barriers." These representations lack the specificity and

4

clarity necessary to support a fraud, misrepresentation or other reliance-based theory of liability,

particularly in light of the express terms of the Letter of Intent.  Indeed, these so-called representations

are alleged in terms so vague as to be essentially meaningless.  The Complaint provides no "who,"

"what," "where" or "when" regarding its references to its avoiding "contractual impediments" and

"contractual barriers."  The only "specifically" alleged representation attributed to representatives of

the Defendants is that "there would be no restrictive covenants relating to competitors that would

preclude Cabela's Wholesale from leasing the Marketplace Site."  (Complaint ¶60).

Moreover, Cabela's Wholesale's vague allegations regarding avoiding "contractual

impediments" and "contractual barriers" also fail to support viable fraud and misrepresentation claims

because they are prospective in nature.   Under Pennsylvania law, an alleged promise to undertake a

future act cannot serve as the basis for a fraud claim.  *Shoemaker v. Commonwealth Bank*, 700 A.2d

1003, 1006 (Pa. Super. Ct. 1997).  In *Shoemaker*, the Court explained:

> It is well-established that the breach of a promise to do something in
> the future is not actionable in fraud.  *Krause v. Great Lakes Holdings,
> Inc.*, 387 Pa. Super. 56, 67, 563 A.2d 1182, 1187 (1989); *Edelstein v.
> Carole House Apartments, Inc.*, 220 Pa. Super. 298, 303, 286 A.2d
> 658, 661 (1971).  The Shoemakers base their fraud claim on
> Commonwealth's alleged promise that it would obtain an insurance
> policy for their home if they failed to do so. Commonwealth was,
> therefore, promising to take future action. Thus, Commonwealth's
> promise cannot form the basis of a cause of action in fraud. *See
> Krause, supra*, at 67, 563 A.2d at 1187 (an oral representation that a
> party would assume a debt obligation in exchange for the forbearance
> from legal action was not actionable in fraud because the
> representation was a promise to do something in the future); *Edelstein,
> supra*, at 304, 286 A.2d at 661 (a promise to relieve person of liability
> if certain condition was met is not actionable in fraud because
> representation was promise to do something in the future). We
> therefore hold that the trial court properly granted summary judgment
> on the fraud claim.

*Id.*

In the present case, Cabela's Wholesale seeks to convert accurate representations concerning the absence of certain restrictive covenants, coupled with meaningless references to avoiding "contractual impediments," into a promise to refrain from leasing the Marketplace Site to another prospective tenant. This contrivance is invalid based upon Cabela's Wholesale's admission that Defendants never guaranteed a lease of the Marketplace Site to it and the express language of the Letter of Intent.

**B.    The "No Option" and "No Reservation" terms of Letter of Intent readily distinguish this case from *Den-Tal-Ez*.**

Cabela's Wholesale's brief relies on an over-generalized interpretation of the facts and holding of *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 389 Pa. Super. 219, 566 A.2d 1214 (Pa. Super. Ct. 1989). In that case, Den-Tal-Ez, Inc. ("Den-Tal") and Siemens Capital Corp. ("Siemens") engaged in negotiations concerning Siemens' acquisition of Den-Tal. In connection with these negotiations, Siemens and Den-Tal entered into both a confidentiality agreement and letter of intent. The letter of intent did not include a "no-shop" clause prohibiting Siemens from negotiating with other potential acquisition targets. However, the confidentiality agreement prohibited Siemens' use or disclosure of trade secrets and confidential information it acquired during its negotiations with Den-Tal. During the negotiations, Siemens represented to Den-Tal that it was not pursuing the acquisition of a competitor of Den-Tal. Later, after Siemens acquired significant trade secrets and confidential information from Den-Tal, Siemens broke off negotiations and proceeded to acquire Den-Tal's competitor. Den-Tal sought an injunction to enjoin the acquisition based upon Siemens' misappropriation of Den-Tal's trade secrets. Siemens argued that because the letter of intent did not prohibit it from negotiating with other potential acquisition targets, it was free to do so. *Den-Tal-Ez, Inc.*, 566 A.2d at 1218-1220.

The Superior Court held that the language of the letter of intent was not dispositive of Den-Tal's request for injunctive relief. *Id*. at 1222. Because the letter of intent was silent on the subject, the court also held that the letter of intent did not require exclusion of Siemens' representations that it was not pursuing the acquisition of Den-Tal's competitor. *Id*. at 1225. The court did not hold that explicit provisions of the letter of intent could be ignored, which is the interpretation of the Letter of Intent Cabela's Wholesale urges upon this Court. In addition, the driving factor behind the decision in *Den-Tal-Ez, Inc.* was Siemens' breach of the confidentiality agreement and use of Den-Tal's trade secrets. Thus, the dispositive distinction between *Den-Tal-Ez* and this case is obvious. In *Den-Tal-Ez,* the letter of intent did not address third-party negotiations and Siemens violated a separate confidentiality agreement when it engaged in negotiations to acquire Den-Tal's competitor. In contrast, the Letter of Intent in this case explicitly addressed and protected Defendants' right to engage in negotiations with other prospective tenants.

Far more analogous to the present circumstances is the Pennsylvania Superior Court's affirmance of the trial court's granting of a motion to dismiss in *Jenkins v. County of Schuylkill*, 658 A.2d 380 (Pa. Super. 1995). In *Jenkins*, the plaintiff entered into negotiations to lease a building to be used as an Emergency Management Center. *Id*. at 381. The plaintiff responded to a "Request for Proposal" for the building that stated that "the Schuylkill County Commissioners reserve the right to reject any or all offers or to waive any informalities or defects or to negotiate for better terms." *Id*. Following over four months of negotiations, including assurances from the County that the plaintiff was the "prime candidate" for the contract and that a "brief one hour meeting [would] outline the lease items and project specifics" remaining in the contract, the County withdrew from negotiations unilaterally. *Id*. The plaintiff sued to recover the

7

$68,969.07 it had expended in preparing proposals and floor plans "to accommodate [the County's] needs in reliance upon the alleged contract." *Id.* at 383.  The court held that because no contract or obligation had ever existed, and the terms of "the letter makes it clear that no contract could be entered into between the parties until an agreement was confirmed and accepted by the Schuylkill County Board of Commissioners," the trial court correctly granted the County's motion to dismiss.  *Id.*  The Superior Court held that because the terms of the letter of intent were explicit, and because no final approval was ever obtained, "[plaintiff's] claim must fail." *Id.*

*Den-Tal-Ez* and *Jenkins* stand for a very simple principle: When interpreting a letter of intent, confidentiality agreement, or other document adopted by parties to express the rules governing their negotiations, the words of the document matter, are controlling, and bar claims based upon alleged contrary prior oral representations.  In *Den-Tal-Ez*, the parties' letter of intent was silent concerning whether the defendant had the right to negotiate with third parties, but a separate confidentiality agreement limited such activities.  556 A.2d at 1225.  In *Jenkins*, the Request for Proposal issued by the defendant expressly permitted the defendant to reject any offer at any time and, thus, precluded the plaintiff from asserting claims based upon breach of contract or failure to negotiate in good faith.  658 A.2d at 384.

The Letter of Intent at issue in this case expressly disclaimed the grant of any reservation of, or option on, the Marketplace Site and, thus, preserved the right of Millcreek Marketplace to negotiate with, and ultimately lease the Marketplace Site to, another prospective tenant. Cabela's Wholesale's position in this case is tantamount to claiming a reservation of, and option on, the Marketplace Site and, therefore, unsustainable under the express language of the Letter of Intent.

Cabela's Wholesale also argues that its claims should proceed because the Letter of Intent is not a fully integrated agreement. This argument fails for the same reasons. Whether the Letter of Intent is "fully integrated" is irrelevant because the document specifically addresses the subject of Cabela's Wholesale's claims. The Letter of Intent unambiguously disclaims the granting of an option or reservation to Cabela's Wholesale. This clear expression of the parties' intent controls the outcome in this case and requires dismissal of Cabela's Wholesale's fraud, misrepresentation and reliance-based claims.

### C. Cabela's Wholesale cannot avoid dismissal of its claim by asserting that Millcreek Marketplace never intended to avoid "contractual impediments" to a lease.

Apparently recognizing the insufficiency of its claims, Cabela's Wholesale's brief attempts to pivot away from the facts alleged in its Complaint. As noted, the only representation alleged in the Complaint concerned whether restrictive covenants precluded a lease to Cabela's Wholesale. In its brief, however, Cabela's Wholesale argues that its claims are based upon the completely unsupported, speculative and implausible proposition that Millcreek Marketplace never intended to "ensur[e] that no contractual impediments would arise and stymie the negotiations between Cabela's Wholesale and Millcreek Marketplace." (Brief in Opp., p. 1). This argument cannot survive the pleading standards recognized by the Supreme Court and the Third Circuit.

Under current standards, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Manu v. Nat'l City Bank of Ind.*, 471 Fed. Appx. 101, 106-107 (3d Cir. 2012) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The plausibility

standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). In particular, allegations that are "vague" or "conclusory" are "wholly insufficient to support a cause of action." *Id.*, 471 Fed. Appx. at 107.

In addition to the general pleading standards recognized in *Twombly* and its progeny, a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Third Circuit has held that to satisfy Rule 9(b), a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (*quoting Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Rule 9(b)'s heightened pleading standard is designed "to safeguard against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "[A] statement that is 'vague and indefinite in its nature and terms, or is merely a loose conjectural or exaggerated statement, is not sufficient to support' a fraud action, because 'such indefinite representations ought to put the person to whom they are made upon the inquiry, and if he chooses to put faith in such statements, and abstained from inquiry, he has no reason to complain.'" *Marcus v. Rapid Advance, LLC*, 2013 U.S. Dist. LEXIS 80146, 29-30 (E.D. Pa. June 7, 2013) (*quoting Goldstein v. Miles*, 159 Md. App. 403, 436, 859 A.2d 313, 332 (2004)). "Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation or offered simply to harass the opposing party...." *Presbyterian Med. Ctr. v. Budd*, 2003 PA Super 323, 832 A.2d 1066, 1072 (Pa. Super. 2003) (*citing Bata v. Central Penn National Bank of Philadelphia*, 423 Pa. 373, 224 A.2d 174 (1966)).

In the present case, Cabela's Wholesale has not alleged any facts to support the alternative theory asserted in its brief.  Indeed, the facts alleged in the Complaint belie this freshly-minted speculation.  The Complaint alleges that the parties engaged in negotiations spanning almost a full year (Complaint ¶¶ 19, 45); that the parties' negotiations addressed three potential lease sites, including the Marketplace Site (Complaint ¶¶ 15-22); that for approximately nine months, from June of 2012 through February 28, 2013, the parties negotiated and ultimately executed the expressly non-binding Letter of Intent (Complaint ¶¶ 31-41); and that negotiations ended only after Millcreek Marketplace entered into a lease with another prospective tenant.  (Complaint ¶47).  The facts alleged in Cabela's Wholesale's own pleadings support nothing more than a protracted period of negotiations that failed to culminate in a lease.  It cannot evade these facts simply by asserting that Defendants never intended to avoid contractual impediments to a lease.

Judge Cercone of this Court recently rejected an attempt to convert a breach of contract claim into a fraud and misrepresentation claim using boilerplate allegations.  *Pollock v. NFL*, 2013 U.S. Dist. LEXIS 35865, 14-15 (W.D. Pa. Mar. 15, 2013).  In that case, Judge Cercone made the following observation pertinent to Cabela's Wholesale's argument:

> Making boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning its ability to perform were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud.  Of course, "adding the words 'falsely' and 'negligently' to the representations made in the course of reaching an agreement does not convert what is essentially a breach of contract action into a fraud and negligence claim." *Bishop v. GNC Franchising, LLC*, 403 F. Supp.2d 411, 417 (W.D. Pa. 2005) (*citing Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) ("[A] breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced.'").

11

*Id.  See also Chleck v. GE,* 287 F. Supp. 2d 457, 459 (S.D.N.Y. 2003)("There's no doubt . . . that one cannot convert a breach of contract claim into a fraud claim simply by saying the defendant had no intent to perform the contract.").

In the present case, Cabela's Wholesale acknowledges the non-binding nature of the Letter of Intent and that the parties never entered into an actual lease of the Marketplace Site.  Therefore, Cabela's Wholesale has no basis for a breach of contract claim.  Likewise, Cabela's Wholesale cannot transform a failed contract negotiation into a fraud, misrepresentation or detrimental reliance claim based upon a boilerplate assertion that the Defendants never intended to ensure the absence of contractual impediments to a lease with it.  Cabela's Wholesale's suggestion otherwise is precluded by federal pleading standards, the express terms of the Letter of Intent, and Cabela's Wholesale's own factual allegations.

> **D.    Notwithstanding Cabela's Wholesale's efforts to evade the substance of the document, the Letter of Intent is properly before this Court.**

Cabela's Wholesale argues that the Third Circuit's opinion in *In re Burlington Coat Factory* only authorizes district courts to examine documents "integral" or "expressly relied upon" by the plaintiff when deciding a motion to dismiss a complaint.  *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).  This proposed interpretation is unreasonably narrow and inconsistent with Third Circuit precedent.  In context, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Id.* (*quoting Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993).  In fact, the Third Circuit in *Burlington Coat Factory* actually concluded that a document to which the complaint never explicitly referred or even cited could be attached to a motion to dismiss and reviewed by

12

the district court.  *Id.*  The general rule prohibiting consideration of documents not attached to

the complaint is based upon the potential for insufficient notice to the plaintiff.  However, this

problem "is dissipated where plaintiff has actual notice . . . and has relied upon these documents

in framing the complaint."  *Id.*  The exception articulated in *Burlington Coat Factory* is

necessary to prevent "a plaintiff with a legally deficient claim [to] survive a motion to dismiss

simply by failing to attach a dispositive document."  *Id.*  Furthermore, *Burlington Coat Factory*

does not represent an isolated holding, but rather falls squarely within a broader pattern of Third

Circuit case law.  *See e.g.*, *Pension Benefit Guar. Corp*, 998 F.2d at 1196; *Delaware Nation v.*

*Pennsylvania*, 446 F.3d 410, 414 (3d Cir. Pa. 2006) (courts may consider "undisputedly

authentic documents attached to a motion to dismiss"); *Miller v. Clinton County*, 544 F.3d 542

(3d Cir. Pa. 2008) (allowing inclusion of a letter establishing the context of the parties'

interactions that was referred to in the plaintiff's complaint but not attached).

Applying the *Burlington Coat Factory* standard, district courts deciding a motion to

dismiss have considered a document not appended to a plaintiff's complaint in at least two

situations.  The first, identified by Cabela's Wholesale, is when the document is "integral to or

[is] explicitly relied upon in the complaint."  *Soto v. Bank of Lancaster County*, 2011 U.S. Dist.

LEXIS 30045, *17 (E.D. Pa. March 23, 2011) (*quoting Burlington Coat Factory*, 114 F.3d at

1426).  The second is where the documents are "undisputedly authentic, and plaintiff's complaint

relies upon them, plaintiff is presumably on notice of their contents and has the opportunity to

refute the evidence."  *Id.* (*citing Pension Benefit Guar. Corp*, 998 F.2d at 1196).  As noted,

*Burlington Coat Factory* held that a document that was not explicitly referred to or cited within a

plaintiff's complaint was "relied upon" for the purpose of this rule.  114 F.3d at 1426.  Similarly,

the district court in *Soto* found that bank policy documents were "relied upon" in the context of a

complaint that alleged improper service fee charges but did nothing more than refer to the documents at issue and the bank account they governed.  2011 U.S. Dist. LEXIS 30045, *18.

Under the Third Circuit's standards, there is no question that this Court should consider the February 28, 2013 Letter of Intent in deciding Defendants' motion to dismiss.  Cabela's Wholesale expressly referenced the Letter of Intent in its Complaint, the terms of the Letter of Intent directly address the alleged basis for the claims asserted in the Complaint, and Cabela's Wholesale does not question the authenticity of the document.  Cabela's Wholesale's characterizes the terms and significance of the Letter of Intent as they relate to the parties' negotiations, but omits the actual document.  Cabela's Wholesale's pleading sleight-of-hand thus seeks to accomplish the precise injustice *Soto* and related cases have condemned—allowing a plaintiff "with a legally deficient claim" to survive a motion to dismiss "by failing to attach to the complaint a dispositive document."  *Id*. at *17.

### E.     Cabela's Wholesale concedes facts and principles that are fatal to its tortious interference with prospective economic advantage claim.

Cabela's Wholesale acknowledges in its brief that a limited liability company such as Millcreek Marketplace can act only through its agents and representatives.  (Brief in Opp., pp. 18-19).  Cabela's Wholesale concedes that Millcreek Marketplace had the right to negotiate with, and ultimately lease the Marketplace Site to, another prospective tenant.  (Brief in Opp., pp. 6-7).  Cabela's Wholesale expressly identifies The Cafaro Company as an owner of Millcreek Marketplace.  (Complaint ¶9).  And Cabela's Wholesale specifically alleges that The Cafaro Company "entered into a contract with an unknown third party that, by its terms, prohibited Millcreek Marketplace from leasing the Marketplace Site to Cabela's Wholesale." (Complaint ¶47).  Thus, in summary, Cabela's Wholesale bases its tortious interference claim

14

upon one of the owners of Millcreek Marketplace exercising Millcreek Marketplace's

acknowledged right to lease the Marketplace Site to another prospective tenant.

Cabela's Wholesale's claim fails as a matter of law because both Cabela's Wholesale's

Complaint and brief are premised on the fact that The Cafaro Company was acting as an agent of

Millcreek Marketplace when it entered into a lease of the Marketplace Site with another

prospective tenant.  Accordingly, Cabela's Wholesale cannot contend that The Cafaro Company

was acting as "third party" capable of interfering with a potential lease between Millcreek

Marketplace and Cabela's Wholesale.  Cabela's Wholesale's own Complaint identifies The

Cafaro Company as the party who actually entered into the lease with the third party on behalf of

Millcreek Marketplace.  Given this factual allegation, Cabela's Wholesale implicitly

acknowledges that The Cafaro Company was acting as an agent on behalf of Millcreek

Marketplace.  Indeed, any contrary contention makes Cabela's Wholesale's position hopelessly

nonsensical.

Cabela's Wholesale complains that Millcreek Marketplace created a "contractual

impediment" to a lease with it by entering into a lease with another party.  Cabela's Wholesale

identifies The Cafaro Company as the entity that executed the lease with the third party.   If The

Cafaro Company was not acting as one of the agent-owners of Millcreek Marketplace when it

entered into the lease with the third party, there would be no "contractual impediment" to a lease

with Cabela's Wholesale because the lease with the third party would not be binding upon

Millcreek Marketplace.  Thus, despite its conclusory characterizations of The Cafaro Company

as an entity acting independently of Millcreek Marketplace, Cabela's Wholesale's factual

allegations establish that The Cafaro Company was necessarily acting as an agent of Millcreek

Marketplace.  As such, The Cafaro Company is legally incapable of having tortiously interfered

with a prospective contractual relationship between Millcreek Marketplace and Cabela's Wholesale.[2]   *Reading Radio, Inc. v. Fink*, 2003 PA Super, 353, 833 A.2d 199, at 210 (Pa. Super. Ct. 2003); *Wagner v. Tuscarora School Distr.*, No. Civ.A. 1:04-CV-1133, 2006 U.S. Dist. LEXIS 97582, 2006 WL 167731, *12 (M.D. Pa. Jan. 20, 2006).

The foregoing concessions by Cabela's Wholesale also establish that it cannot "prove that the defendant was not privileged or justified in interfering with its contracts," another essential element of its tortuous interference claim. *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 214 (3d Cir. 2009).   This conclusion necessary follows from Cabela's Wholesale's acknowledgment that Millcreek Marketplace had the right to negotiate with, and ultimately lease the Marketplace Site to, another prospective tenant.   No legal basis exists to characterize the exercise of this undisputed right by one of the owners of Millcreek Marketplace as unjustified, tortious or wrongful.

---

[2]   Taking Cabela's Wholesale's argument to its logical conclusion, it would mean that other prospective tenants of the Marketplace Site would have had a tortious interference claim against Baldwin Brothers, Inc., the other owner of Millcreek Marketplace, had it entered into a lease of the Marketplace Site with Cabela's Wholesale.  Such disappointed suitors would merely have to allege that Baldwin Brothers, Inc. had not acted in its capacity as an owner-agent when it executed the lease on behalf of Millcreek Marketplace.  Of course, this argument would fail for the same reasons Cabela's Marketplace's argument fails in this case.

**III.    CONCLUSION**

For the reasons discussed herein and in its principal brief, Defendants, Millcreek

Marketplace, LLC and The Cafaro Company, respectfully request that the Court dismiss

Plaintiff's Complaint with prejudice.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.

By: */s/ Richard A. Lanzillo*
        Richard A. Lanzillo, Esq.
        PA ID #: 53811
        120 West Tenth Street
        Erie, PA  16501-1461
        Telephone: (814) 459-2800
        Fax: (814) 453-4530
        Email:  rlanzillo@kmgslaw.com

        Attorneys for Defendants,
        Millcreek Marketplace, LLC and
        The Cafaro Company

# 1393905.v1

17